# The Mayor, Aldermen, and Citizens of Pittsburgh versus The Pennsylvania Railroad Company.

*Right of the Pennsylvania Railroad Company to construct a branch road through Pittsburgh.*

The power of the Pennsylvania Railroad Company to make branch or lateral railroads, by the terms of their charter, is as large as the powers granted for the construction of the main line of their railroad, and authorizes the construction of a branch connecting their road with the Pittsburgh and Steubenville Railroad in South Pittsburgh, by a route best suited to promote the convenience of the inhabitants of the city and the interests of the company.

APPEAL from the District Court of *Allegheny county*.

This was a proceeding founded on a bill in equity filed by the Municipal Corporation of Pittsburgh, December 22d 1863.

The bill set forth that the Pennsylvania Railroad Company were engaged in digging, excavating, and piling up dirt, stones, &c., in several of the streets of the city of Pittsburgh, greatly impeding the travel, and causing great injury and inconvenience to the citizens, and rendering the city liable to great expenses and damages; that the said railroad company were doing these acts for the avowed purpose of constructing a railroad track from Penn street, under Washington, Seventh, and Pennsylvania avenue, along Fountain and Try streets, and across Breckinridge, Front, Second, Third, and Fourth streets, and across the Monongahela river to some point in South Pittsburgh; that the grade of the proposed road was six feet below the grade of Fourth street, two feet below Third street, three and a half feet above Front street, and fifteen feet above Breckinridge street, and would necessitate a change in the grades of all said streets, besides rendering portions of Try and Fountain streets utterly useless, and greatly damaging the Monongahela wharf where they proposed erecting the abutment of the bridge over the river.

The bill further set forth that the said defendants pretended to be building said railroad as a branch to their main line, under

[Mayor, &c., of Pittsburgh *v.* The Pennsylvania Railroad Co.]

power contained in their charter, but denied any such power, and charged that they were building it as a part of the Pittsburgh and Steubenville Railroad, under some arrangement with that company; that the city councils had, at the instance of the Pennsylvania Railroad Company, passed an ordinance granting the Pittsburgh and Steubenville Railroad Company the right of way, on certain terms and conditions, over the precise route and on the exact grades where the said road was being constructed, and that it was a mere pretext on the part of the Pennsylvania Railroad Company to avoid complying with the terms and conditions of said ordinance.

The bill denied all right in the Pennsylvania Railroad Company to construct such road, and prayed the court for an injunction to restrain them from proceeding with the work.

A supplemental bill was filed April 7th 1864, which set forth that, since the filing of the original bill, at the instance and request of the Pennsylvania Railroad Company, the city councils had passed an ordinance, prepared by the vice-president and solicitor of said road, granting the right of way and consent of the city to said Pennsylvania Railroad Company for the construction of said road, upon certain terms and conditions mutually agreed upon; but that said company, after procuring the passage of said ordinance, and giving assurances that they would accept it, had refused to do so, without stating their objections thereto. It further set forth the willingness and desire of the city to give all reasonable facilities to the said company, and averred that the only object of the city was to guard and protect the rights and interests of the city, and that the said ordinance contained nothing but what was necessary for that purpose, and nothing that the said Pennsylvania Railroad Company could reasonably object to. And it charged that the said Pennsylvania Railroad Company were unwilling to make any arrangement whatever with the city, and were proceeding without any legal authority, but under false pretences, in defiance of law, and in utter disregard of the city's rights to construct said road.

The defendants' answer averred their legal existence as a corporation; that a contest between the cities of Allegheny and Pittsburgh for the location of the western terminus of their railroad was terminated by a decision in favour of Pittsburgh, under which the terminus was fixed at the foot of Liberty street. Admitted that they were building the road mentioned in the bill, and averred that they had a right so to do under their charter and supplement, and that they were doing the work on the best and most available route, one that would do the least damage to private property and the streets of the city.

The bill denied that this work was done as part of the Pittsburgh and Steubenville Railroad, or under any arrangement with

[Mayor, &c., of Pittsburgh *v.* The Pennsylvania Railroad Co.]

that road, but as a branch of their main road under their chartered privileges, none of which had been waived or forfeited by any act of the company.

The cause was heard in the District Court, on the motion for a preliminary injunction, upon the bill, supplemental bill, and answer of J. Edgar Thompson, and the only question argued was the right of the Pennsylvania Railroad Company, under their charter, to build this road as a "branch" of their main line through the city and over the Monongahela river.

The defendants relied upon the 17th section of their charter, which is in these words :—

Section 17. " The said company shall not prevent any person or persons being the owner or owners of land bordering on or adjacent to said railroad from making lateral railroads, and connecting the same with the railroad of the company for the purpose of transporting thereon their produce or other material, being the products of said land; the said connections being made at the expense of the person or persons wishing the same, and according to the directions and subject to the approval of the directors of said company or their authorized agents: and it shall be lawful for the said company, in the manner and subject to the conditions and provisions hereinbefore provided in relation to the main line of their said railroad by this act authorized to be made, to make such lateral railroads or branches leading from the main line of their said railroad to such convenient place or points, in either of the counties into or through which the main line of their said road may pass, as the president and directors may deem advantageous, and suited to promote the convenience of the inhabitants thereof, and the interests of said company."

Defendants also relied upon a special Act passed April 23d 1864, which is in these words :—

" That so much of the charter of the Pennsylvania Railroad Company as forbids the location and construction of the route of their railroad through a place of public worship without the consent of the owner or owners thereof, shall not prevent said company from passing under any place of public worship with their tracks by means of a tunnel, in constructing a branch railroad through the city of Pittsburgh from their main tracks, to connect with the railroad of the Western Transportation Company on the south side of the Monongahela river, in the county of Allegheny."

No testimony was taken, but the cause was argued on bill and answer, and the several Acts of Assembly bearing on the case.

The court was of opinion that sufficient reasons did not appear for granting a preliminary injunction, and refused it.

It was afterwards agreed between the counsel that the affidavit of J. Edgar Thompson should be considered the answer of defendants to the bills of complainants, and the cause be submitted

[Mayor, &c., of Pittsburgh *v.* The Pennsylvania Railroad Co.]

for a final decree without argument. The affidavit was accordingly filed as an answer, and the District Court entered a formal decree dismissing the bill for the purpose of having the question passed upon by this court; which was the error assigned.

*J. W. F. White,* for appellants.

*J. H. Hampton* and *Theodore Cuyler,* for appellees.

The opinion of the court was delivered by

READ, J.—The real question in this case is, whether the railroad company possess the power, under their charter,' to build this branch road. The propriety of the location is not called in question by the appellants, who had passed an ordinance approving of it. This leads us to an examination of the act to incorporate the Pennsylvania Railroad Company of the 13th of April 1846, and its supplements. The 11th section authorized the president and directors of the company to construct a railroad with such branches or lateral roads as thereinafter mentioned, beginning at the western terminus of the Harrisburg, Portsmouth, Mountjoy and Lancaster Railroad, in the borough of Harrisburg, and thence by a direct practicable route, and terminates at such point or points in, at, or near the city of Pittsburgh or other place in the county of Allegheny, with authority to extend said road or a branch thereof to the town or harbour of Erie, in the county of Erie, as to the said president and directors may seem most advantageous or expedient. By the 5th section of the Act of 27th of March 1848, the said road shall terminate at or near the city of Pittsburgh. The road, therefore, or rather the main line thereof as authorized was intended, with roads already in operation, to connect the cities of Philadelphia and Pittsburgh, which were only central corporations, about each of which were clustered several other municipalities, and forming together, as in the case of London, the commercial emporiums of Philadelphia and Pittsburgh. In the one instance, these are all now consolidated into one great city, which must soon be the case with the other.

The last clause of the 17th section makes provision for the branches or lateral roads mentioned in the 11th section in the following manner : " And it shall be lawful for the said company in the manner and subject to the conditions and provisions hereinbefore provided in relation to the main line of their railroad, by this act authorized to be made, to make such lateral railroads or branches, leading from the main line of their said railroad to such convenient place or points in either of the counties, into or through which the said main line of their road may pass, as the president and directors may deem advantageous and suitable to

promote the convenience of the inhabitants thereof, and the interests of the said company."

These branches or lateral railroads within the space of the counties mentioned, depend upon the discretion of the president and directors, who are made the judges of the convenient place or points to which they are to be led, and also of their advantages, and whether they are suited to promote the convenience of the inhabitants of such counties, and the interests of the company. If these terms are fully complied with, then in making such branches or lateral railroads the company have, or using the language of the act, the president and directors have, exactly the same power and authority as they possess and can exercise in constructing their main line. The branches and the main line in these respects are placed on the same footing.

The question then narrows itself down to what are the powers of the company in constructing the main line of their road? They are by the original act not to pass through any buryingground or place of public worship, or any dwelling-house, without the consent of the owner or owners thereof. By the 3d section of the Act of 27th March 1848, the word dwelling-house is construed only to extend to homesteads in possession and occupancy of the owner or owners, and shall not extend to dwellings kept for rent, full compensation to be made to the owners of such buildings for all damages, to be ascertained as in other cases. By the same act the county of Allegheny and the cities of Pittsburgh and Allegheny, and the municipal corporations in the county of Philadelphia, were authorized to subscribe to the stock of the company, and the subscription by the city of Philadelphia was validated. What is now the city of Philadelphia subscribed $5,000,000, and Allegheny county $1,000,000, to the stock of the company, the last subscription being made under a recommendation from a county convention of the citizens that the railroad company should establish the terminus of their road within the limits of the city of Pittsburgh. This was accordingly done by the company.

The fifth section points out the course to be taken in changing the site of any turnpike or public road; and the first section of an Act of 12th April 1851, directs that this shall be so construed as to include the streets, lanes, and alleys in any town, city, or borough through which it may pass.

The cardinal object of the company has been to make Pittsburgh a great railroad centre, within whose limits all the railroads approaching it should connect with the Pennsylvania Railroad, a measure beneficial to the company and most advantageous to all the inhabitants of our western metropolis. The connection is complete between the Pittsburgh, Fort Wayne, and Chicago

[Mayor, &c., of Pittsburgh *v.* The Pennsylvania Railroad Co.]

Railroad, and the main line by a viaduct across the Allegheny, and it seems singular that there should be any objection to a similar connection between the Pittsburgh and Steubenville Railroad, in South Pittsburgh, and the Pennsylvania Railroad, by another viaduct across the Monongahela. Such a branch, therefore, from the main line in Pittsburgh crossing the Monongahela and running up to the Pittsburgh and Steubenville road, is within the very words and spirit of the 17th section, and the route which has been approved by the complainants is clearly the most advantageous and best suited to promote the convenience of the inhabitants and the interests of the company.

It is clear, therefore, that the company have the power to make this branch, and that its speedy completion will greatly benefit the community. Transhipment of freight or passengers occasions delay and expense, and great dissatisfaction. The Pennsylvania Railroad Company is now the real owner of the main line of canal navigation, and of the railroads from Pittsburgh to the Delaware river, and when the connection is complete with the Steubenville road and with the road at Philadelphia leading to New York, there will be an uninterrupted line of travel by land from Cincinnati to the latter city. The time cannot be far distant when the public convenience will force Pittsburgh and its sister city and their surrounding boroughs and municipalities to consolidate themselves into one great city, governed by one municipal legislature and one executive head. Its citizens will then regard with astonishment the local jealousies of the north and south banks of the two streams which here unite and form the great river Ohio.

From what we have said it is apparent that we do not think the city of Pittsburgh has any right to control the defendants in the exercise of this power, particularly as they have adopted the very plan for the construction of the branch which the plaintiffs approve. This being our opinion, it is unnecessary to discuss the collateral matters which have been pressed upon us, except to remark that the large expenditure already made on this branch is a strong additional reason to prevent any interference with it at this time, especially after the legislative recognition of it by the Act of 23d April 1864.

Decree affirmed at the costs of the appellants.