## Millersville Annexation Case.

Argued January 22, 1971, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MANDERINO, MENCER and ROGERS.

*Christopher S. Underhill,* with him *Windolph, Burkholder & Hartman,* for appellant.

*Charles B. Grove, Jr.,* with him *May, Grove, Stork & Blakinger,* for appellee.

OPINION BY JUDGE MANDERINO, July 12, 1971:

On July 21, 1969, a number of freeholders of a one hundred seventy-one acre residential area in Lancaster Township known as Quaker Hills petitioned the Council of the Borough of Millersville to be annexed to the Borough. After a public meeting, the Borough of Millersville concluded that a sufficient number of freeholders ( a majority) had signed the petitions to effectuate the annexation. The Borough then enacted an ordinance on October 6, 1969, annexing Quaker Hills to the Borough of Millersville.

Soon thereafter, Lancaster Township filed a complaint in the Lancaster County Court of Common Pleas, alleging that the annexation ordinance was invalid because a majority of the freeholders of Quaker Hills had *not* signed the petition requesting annexation. This dispute arose over the question of whether a tenancy by the entireties should be counted as one or as two freeholds.

While hearings on the annexation were being held, counsel for both the Borough and the Township entered into a stipulation to the effect that if a tenancy by the entireties was counted as two freeholds, then a majority of freeholders had not signed the petition. The stipulation further stated that if such a tenancy was to be counted as one freehold, then a majority of freeholders had signed the petition.

The lower court decided that a tenancy by the entireties constituted two freehold interests and that, on the basis of the stipulation entered into by both parties, a majority of freeholders in Quaker Hills had therefore not signed the petition for annexation. We do not agree.

The first question to be dealt with is the scope of review of this court with respect to the question presented by this case. Prior to the adoption of the new Constitution in 1968, the scope of review of an appellate court on a challenge to a Borough ordinance was very limited. The Borough Code provides as follows: "Complaint as to the illegality of any ordinance . . . may be made to the court of quarter sessions . . . by any person aggrieved, within thirty days after the enactment of any ordinance . . . *and the determination and order of the court thereon shall be conclusive.*" (Emphasis supplied.) (Act of February 1, 1966, P. L. , 53 P.S. 46010.) When the Borough Code and other statutes made the order of a lower court "conclusive", appellate review could be had only on narrow certiorari. On narrow certiorari, an appellate court dealt only with the question of jurisdiction, the regularity of the proceedings, excess in the exercise of power and constitutional questions.

However, with the passage of the new Constitution in 1968, the right to appeal in many cases, including the one before us now, was greatly broadened. Article Five, Section Nine, of the new Constitution provides in part as follows: ". . . there shall . . . be a right of appeal from a court of record . . . to an appellate court, the selection of such court to be as provided by law. . . ." This section of the Constitution has been implemented by the Appellate Court Jurisdiction Act (Act No. 223 of July 31, 1970). Section 402 of that Act provides as follows: "The Commonwealth Court shall have exclusive jurisdiction of appeals from final orders of the courts of common pleas in any of the following cases . . . (4) All

actions or proceedings arising under any county, institution district, city, *borough,* incorporated town, township, public school, planning or zoning code . . . or where is drawn in question the application, interpretation, or enforcement of . . . any home rule charter or *local ordinance* or resolution." (Emphasis supplied.) The language of the above implementing legislation is as broad as that in the Constitution. Read together, the two provisions envision a broad scope of review on which the reviewing court may consider the entire record of the case brought before it. Thus, the Commonwealth Court, in hearing this challenge to the validity of an ordinance of the Borough of Millersville, is not limited to reviewing only the narrow questions of jurisdiction, regularity of proceedings, excess of exercise of powers, and violation of constitutional rights.

Turning to the merits of this case, we first address ourselves to the question decided by the lower court: whether a tenancy by the entireties constitutes one or two freehold estates. Contrary to *In Re: Annexation by the Borough of Phoenixville of a Portion of Schuylkill Township, Chester County,* 218 Pa. Super., 205, 275 A. 2d 863 (1971), we hold that owners of undivided interests constitute one person or petitioner for purposes of this annexation.

Lancaster Township, in its challenge to the validity of the ordinance in question here, puts a great deal of emphasis on the fact that the annexation ordinance was initiated under the Borough Code rather than under the Second Class Township Code. Both codes require that a majority of freeholders must petition. Section One of the Second Class Township Code provides as follows: "A majority in interest of owners of undivided interests in any piece of property shall be deemed and treated as one person for the purpose of ascertaining the number of petitioners." (Act of July 20, 1953, P. L. 550; 53 P.S. 67501.) The Borough

Code on the other hand, has no such similar provision and is silent as to the question of whether a tenancy of undivided interests in a whole should be counted as one or two freeholds. Lancaster Township would have this court infer from the silence in the Borough Code, a legislative intent to effect a conclusion opposite from that in the Second Class Township Code. Such an inference would be unwarranted.

When the Borough of Millersville passed the ordinance annexing land from Lancaster Township it had the option of proceeding either under Sections 416-420 of the Borough Code or under Section 501 of the Second Class Township Code. The two codes provide alternative methods of annexation when a Borough and a Second Class Township are involved. It is inconceivable that the Legislature would intend different results as to the number of existing freeholds in territory to be annexed under these two alternative methods of proceeding. In interpreting statutes, the courts are to be guided by the Statutory Construction Act (Act of May 28, 1937, P. L. 1019; 46 P.S. 501 et seq.) Section 552(1) of that Act states "that the Legislature does not intend a result that is . . . unreasonable." Also, Section 562 of the same Act provides: "Laws or parts of laws are in pari materia when they relate to the same person or things or to the same class of persons or things. Laws in pari materia shall be construed together, if possible, as one law."

On the question of annexation, the Borough Code and the Second Class Township Code are unquestionably "in pari materia", since they relate to the identical things—annexation by a borough of land in a second class township. Thus, the possibility of construing them as one law must be pursued. Again the Statutory Construction Act provides a solution. Section 563 states that a particular or special provision controls a general

provision in the same or another law. If this is so, then it follows that when two statutes deal with the same things, a particular provision in one will control when the other statute is silent as to that matter. Thus, the particular provision in the Second Class Township Code relating to the number of freeholds to be counted in a tenancy by entireties controls and interprets the silence of the Borough Code on that matter.

Having concluded that a tenancy by entireties constitutes one freehold, it now becomes necessary to determine if a majority of freeholders in Quaker Hills signed the annexation petition. The parties have agreed that, counting a husband and wife as one freeholder and all others as one freeholder, there exist 366 freeholds in Quaker Hills. Using this method of counting freeholders—husband and wife as one and all others as one—there are signatures of 232 freeholders on the annexation petition. This gives a clear majority of freeholders since it equals a percentage of 63.39 percent. However, the parties to this litigation are questioning the method used in counting twenty-three of these signatures, signed as "Mr. and Mrs." That controversy arose over the fact of whether such a signature should be counted as the signature of one or of two freeholders or whether it could be a valid signature at all. Since a resolution of this problem is not necessary to our decision we do not decide what validity such a signature has. Assuming without deciding, that these questioned signatures had no validity at all, still leaves us with a petition signed by 209 of the 366 freeholders—a majority of 57.1 percent.

The parties have also raised the question of the validity of a stipulation entered into while hearings on the annexation were being held in the lower court. There is no need to consider this question in view of what has been said.

The ordinance passed by the Borough of Millersville effecting the annexation of a portion of Lancaster Township known as Quaker Hills was validly enacted. The decision of the lower court is reversed.

---

CONCURRING OPINION BY PRESIDENT JUDGE BOWMAN:

Article V, Section 9 of the 1968 Constitution of Pennsylvania mandates ". . . a right of appeal in all cases to a court of record from a court not of record . . ." and that ". . . there shall also be a right of appeal from a court of record or from an administrative agency to a court of record or to an appellate court, the selection of such court to be as provided by law. . . ."

Section 4 of this same article created the Commonwealth Court as a State-wide court with ". . . such jurisdiction as shall be provided by law."

Following the adoption of these constitutional provisions under the generally revised Article V restructuring the Judicial branch of the government, The Commonwealth Court Act[1] and the Appellate Court Jurisdiction Act[2] were enacted by the legislature pursuant to this constitutional mandate.

The creation of a constitutional "right of appeal" to such court as shall be provided by law and the restructuring of the courts comprising the judicial branch of our government with such jurisdiction as provided by law would suggest careful consideration and clear resolution of issues by the courts as they arise under this constitutionally mandated right of appeal and its implementation by legislative enactment.

While I concur with the result reached by the majority on the merits of the case, I cannot agree that

---

[1] Act of January 6, 1970, P. L.　　(Act No. 185-1969), 17 P.S. 211.3.

[2] Act of July 31, 1970, P. L.　　(Act No. 223-1970), 17 P.S. 211.101.

implementation of the constitutional right of appeal or the scope of review is or can be found within the provisions of the Appellate Court Jurisdiction Act of 1970 except as to the selection of the particular court to which an appeal will lie.

On the issue of the scope of review I agree with and join in the concurring opinion of Judge CRUMLISH. To merely state, as does the majority, that the constitutional right of appeal and the Appellate Court Jurisdiction Act of 1970 "envision" of themselves a broad scope of review is to see something that is not there. Neither one touches upon the subject directly or inferentially.

On the issue of implementation of the constitutional right of appeal I am at a loss to comprehend why the majority chooses to ignore the very statute enacted to implement the right to appellate review of a lower court decision.

The Act of December 2, 1968, P. L. (Act No. 351), as amended, 12 P.S. 1111.1-1111.2 provides:

Section 1.

"Except as provided in section 2 there shall be a right of appeal under this act from a final order, decision, judgment, or sentence of a court of record to an appellate court as provided by section 9 of Article V of the Constitution."

Section 2.

"The provisions of this act shall not apply to any order, decision, judgment or sentence of a court of record which under any act of assembly heretofore enacted may be appealed to an appellate court."

Except for the selection of the particular appellate court to which an appeal will lie, we need not and should not look for implementation of the constitutional right of appeal beyond this legislative enactment. To seek it elsewhere obscures rather than clarifies and ignores recent pronouncements of our Supreme Court on the subject. *See Smethport Area School Dis-*

*trict v. Bowers,* 440 Pa. 310, 269 A. 2d 712 (1970);
*Conestoga National Bank of Lancaster v. Patterson,*
442 Pa. 289, 275 A. 2d 6 (1971).

Only in deciding that the Commonwealth Court has
jurisdiction over the subject matter of this appeal under
Section 402 of the Appellate Court Jurisdiction Act of
1970 is the majority correct, as it is the court selected
by legislative enactment to hear such an appeal.

Judge MENCER concurs in this opinion.

CONCURRING OPINION BY JUDGE CRUMLISH, JR.:

I cannot agree with the majority that the broad
scope of review we have exercised in this case arises
from the "broad" language of Article V, Section 9 of
the new Constitution of 1968 and the Appellate Court
Jurisdiction Act of 1970. Our broad scope of review
stems from the *nature* of the appeal before us.

Certiorari, whether broad or narrow, is a *court di-
rected* appeal based essentially upon a writ of error by
the appellant. In such circumstances, courts often lim-
ited review to jurisdictional and procedural errors ap-
parent on the record. The case before us, however, is
*not* an appeal by writ of error or certiorari.

Article V, Section 9 and its implementing statutes
have provided a *right of appeal* in this case. Where the
Constitution, or the Legislature, if so empowered, has
not limited the scope of our review powers, we may
not by ourselves apply the strictures of narrow certior-
ari. As President Judge KELLER of the Superior Court
stated in *Esakovich v. Groudine,* 141 Pa. 365, 376, 14
A. 2d 850, 855 (1940): "This was a true 'appeal', not
an appeal in the nature of a writ of error (Aurentz v.
Porter, 48 Pa. 355, 366, Gilmore v. Connellsville Water
Co.—Campbell's Appeal, 2 Pa. Super. Ct. 99—see Act
of May 9, 1889, P. L. 158). We have, therefore, the
power to consider the whole matter and dispose of the
case as justice requires. Rand v. King, 134 Pa. 641,

645, 19 A. 806; 2 R.C.L. Appeal and Error, §238, pp. 283, 284; 3 Am. Jur., Appeal and Error, §814, pp. 355, 356, and §1207, p. 709." Neither Article V, Section 9, nor any of its implementory statutes *limits* our broad power to "consider the whole matter and dispose of the case as justice requires." It is for *this* reason that we do so.

I concur.

Judge ROGERS concurs in this opinion.