616 A.2d 111

### In re INCORPORATION OF THE BOROUGH OF BEAR CREEK VILLAGE.

### Appeal of BEAR CREEK TOWNSHIP, Appellant.

Commonwealth Court of Pennsylvania.

Argued June 18, 1992.

Decided Sept. 24, 1992.

596

598

---

Glenn G. Yanik, for appellant.

Arthur L. Piccone, for appellee.

Before COLINS and KELLEY, JJ., and LORD, Senior Judge.

KELLEY, Judge.

The Supervisors of Bear Creek Township (township) appeal from a final decree of the Court of Common Pleas of Luzerne

County (trial court) which ordered the incorporation of the Borough of Bear Creek Village. We affirm.

Bear Creek Village is a residential subdivision surrounding Bear Creek Lake in eastern Luzerne County, located entirely within Bear Creek Township. On August 3, 1990, some 108 individuals purporting to constitute a majority of the resident freeholders of Bear Creek Village (collectively referred to as the Village) filed a petition for incorporation as a borough pursuant to The Borough Code, Act of February 1, 1966, P.L. (1965) 1656, *as amended,* 53 P.S. §§ 45101–48501. Section 201 of The Borough Code, 53 P.S. § 45201, authorizes courts of common pleas to incorporate an area within their jurisdiction as a borough and provides that the application for incorporation shall be by a petition to the court of common pleas. Where, as here, the proposed borough is entirely in one township, the petition must be signed by a majority of the freeholders residing in the proposed borough. *Id.*

Pursuant to section 202(b) of The Borough Code, 53 P.S. § 45202(b), the trial court, by order of August 3, 1990, established a Borough Advisory Committee (committee) consisting of two residents of the proposed borough, two residents of the township, and one resident of the county not residing in either area to serve as chair-person of the committee.[1] The township filed exceptions to the order establishing the committee, arguing that the representatives of the township had been appointed without consultation with the township, as required

1. Section 202(b) provides:
 (b) The court shall establish a Borough Advisory Committee which shall consist of two residents of the proposed borough, two residents of the existing governmental unit or units recommended by the respective governing body of the unit or units and not residing within the proposed borough and one resident of the county not residing in either area who shall serve as the chairman of the committee. Such a committee shall be established when a petition is received by the court for the creation of a borough. Pursuant to this act, the members of such committee shall be appointed by and shall serve at the pleasure of the court. The members shall serve without salary, but the court may entitle each such member to reimbursement for his actual and necessary expenses incurred in the performance of his official duties. The director of the County Planning Commission shall serve as advisor to the committee.

by Section 202(b). Subsequently, the trial court replaced the original township representatives with two new committee members recommended by the township.

The committee held a public meeting on September 24, 1990 at which it received comments from five persons and seven exhibits in support of the proposed incorporation. No notes of testimony were taken at the meeting and no subsequent public meetings were held. On January 22, 1991, the committee filed its written report with the trial court in which the majority of the committee recommended incorporation. A minority recommendation was filed by the two township representatives on the committee.[2]

The township filed exceptions to the report. ·On September 19, 1991, the trial court granted the incorporation petition adopting the findings of fact and conclusions of law contained in the majority report. At this point in the process, a procedural snarl appeared. On September 25, 1991, the township purported to appeal to this court from the trial court's order of September 19, which was docketed at No. 2081 C.D. 1991. While this appeal was pending, the Village, on October 16, 1991, petitioned the trial court to "enforce" its order of September 19 by certifying the incorporation question to a referendum vote in the upcoming municipal election pursuant to section 202(d) of the Borough Code.[3] The township filed an

2. Section 202(c) of The Borough Code provides:
 (c) Such committee shall, within sixty days of its creation, advise the court in relation to the establishment of the proposed borough. In particular, the committee shall render expert advice and findings of fact relating to the desirability of such an incorporation, including, but not limited to, advice as to:
 (1) the proposed borough's ability to obtain or provide adequate and reasonable community support services such as police protection, fire protection and other appropriate community facility services;
 (2) the existing and potential commercial, residential and industrial development of the proposed borough; and
 (3) the financial or tax effect on the proposed borough and existing governmental unit or units.

3. Section 202(d) provides:
 (d) The court, if it shall find, after hearing and advice of the committee, that the conditions prescribed by this section have been complied with, shall certify the question to the board of elections of

answer, contending that the trial court was without jurisdiction due to the pending appeal.

The trial court, by order of October 24, 1991, granted the petition of the Village and certified the question of incorporation for a referendum vote. The township then appealed the October 24 order to this court, which was docketed at No. 2301 C.D. 1991. The Village filed motions to quash both appeals. Following argument, both appeals were quashed as interlocutory. The referendum vote was held on November 5, 1991, and on November 22, 1991, the trial court certified the results as 106 in favor of incorporation and 71 against. On November 26, 1991, the trial court entered a final decree granting the petition for incorporation. The township has now appealed, raising eight separate issues for our consideration. We shall first discuss the township's procedural argument.

## VALIDITY OF THE REFERENDUM VOTE

The township first argues that its appeal of the trial court's September 19 order deprived the trial court of jurisdiction to enter the October 24 order which certified the question of incorporation for a referendum vote. According to the township, upon the filing of the appeal from the September 19 order, an automatic supersedeas existed by virtue of Pa.R.A.P. 1736(b). Because no stay of the automatic supersedeas was requested, the township contends that the trial court was without jurisdiction to enter the October 24 order. We cannot agree.

President Judge Craig, by order of November 1, 1991, quashed the township's appeal from the September 19 order, noting that said order "is interlocutory in that the issuance of the order of October 24, 1991, by the same court, reveals that the statutory process was not concluded by the September 19 order." No reconsideration from President Judge Craig's order was requested. We have held that where no petition for

the county for a referendum vote of the residents of the proposed borough. Upon receipt of the certified election results, the court shall enter a final decree granting or denying the prayer of the petitioners.

reconsideration from an order of a single judge has been filed, that order will normally be considered binding. *Larocca v. Workmen's Compensation Appeal Board (The Pittsburgh Press)*, 140 Pa.Commonwealth Ct. 192, 592 A.2d 757 (1991).

Because the trial court's September 19 order has been held to be interlocutory, further action by the trial court was permitted by Pa.R.A.P. 1701, which relevantly provides:

> **(a) General rule.** Except as otherwise prescribed by these rules, after an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may no longer proceed further in the matter.

> **(b) Authority of a trial court or agency after appeal.** After an appeal is taken or review of a quasijudicial order is sought, the trial court or other governmental unit may:
>
> . . . .
>
> > (6) Proceed further in any matter in which a nonappealable interlocutory order has been entered, notwithstanding the filing of a notice of appeal or a petition for review of the order.

Although the trial court had the authority to proceed in the matter even after the filing of the interlocutory appeal of the September 19 order, Pa.R.A.P. 1736 *does* provide for an automatic supersedeas upon the taking of an appeal by, *inter alia*, a political subdivision. Had the motion to quash been denied, we would agree that the October 24 order would have been entered in violation of the automatic supersedeas.

The appeal, however, was quashed as interlocutory, thereby rendering the automatic supersedeas void *ab initio*. To hold otherwise would produce the absurd result of quashing the appeal as interlocutory because the statutory process had not yet been completed, then later voiding the completion of that same process because of the existence of an automatic supersedeas which arose by virtue of an appeal which itself was held to be improper. In essence, this would allow the township to collaterally attack President Judge Craig's order. As we have explained, however, that order is now binding.

■ Accordingly, we conclude that the appeal from the September 19 order did not divest the trial court of jurisdiction, pursuant to Pa.R.A.P. 1701(b)(6). Additionally, because the appeal was ultimately quashed, any automatic supersedeas which may have existed by virtue of Pa.R.A.P. 1736 became void *ab initio* and cannot now operate to nullify the effect of the October 24 order. Therefore, the referendum was properly held and the final decree of November 26, 1991 granting the petition for incorporation is properly before us.

## LACK OF STENOGRAPHIC RECORD

■ The township next raises seven substantive areas in which it alleges that the trial court erred. Initially, we note that our standard of review is to affirm the trial court's findings unless they are not based on competent evidence, or unless the court's conclusions of law are not reasonably based upon its findings of fact. *In Re Borough of New Morgan,* 527 Pa. 226, 233, 590 A.2d 274, 277, *cert. denied,* —— U.S. ——, 112 S.Ct. 179, 116 L.Ed.2d 141 (1991).

In the present case, the trial court did not hold an evidentiary hearing, but instead adopted the findings of fact contained in the report of the Borough Advisory Committee. The committee based its findings in part on comments received during a public hearing held on September 24, 1990.[4] No stenographic record was made of the hearing, however. The witnesses therefore are neither identified in the record nor were their comments preserved. The township now argues that the committee's findings are not based on competent evidence of record. Because the trial court took no additional evidence, the township contends that the trial court's findings must also fall.

We find no express requirement in the Borough Code that a transcript be made of public meetings conducted by the committee. For that matter, there is no requirement that the

4. The committee also based its findings on "a review of the docket entries filed in the above-captioned matter, including but not limited to, the comments received by the Committee at the public hearing ...." Reproduced Record (R.) at 29a.

committee even hold public meetings. While it is certainly preferable that public meetings be held and also preferable that a transcript be made for the purpose of appellate review, for the following reasons we are persuaded that the posture of this case does not require reversal.

 The township now seeks to attack findings of fact relating to:

(1) The level of fire protection to be afforded to the proposed borough;

(2) The adequacy of the present sewage system in the proposed borough;

(3) Whether the estimated budget of the proposed borough is adequate to meet its needs; and

(4) The amount of land remaining for commercial use within the proposed borough.

These issues were addressed by the majority report of the committee. Committee Findings of Fact Nos. 2, 3, 6 and 8, R. at 30a–32a. Although no specific evidence of record is cited as a basis for these findings, the township did not file exceptions to these findings before the trial court, but rather now attempts to raise these issues for the first time on appeal.

It is axiomatic that issues raised for the first time on appeal will not be considered. *Spencer v. Zoning Hearing Board, Rockland Township,* 111 Pa.Commonwealth Ct. 111, 533 A.2d 497 (1987). We have held that where a party fails to object to the decision of the trial court not to hear testimony, the issue is not preserved on appeal. *Commonwealth v. Mayer,* 131 Pa.Commonwealth Ct. 64, 569 A.2d 415 (1990). Where a claimant in an unemployment compensation case failed to object to a telephonic hearing, we held that the issue had been waived on appeal. *Hoover v. Unemployment Compensation Board of Review,* 97 Pa.Commonwealth Ct. 414, 509 A.2d 962 (1986).

Similarly, the township now argues that the procedure employed below was improper. The township, however, acquiesced in the decision of the trial court to proceed based on the committee's findings of fact, as reflected by the fact that

the township's exceptions to the Report of the Committee did not attack any of the committee's findings of fact presently being raised.[5] Had the township properly raised the issue of the adequacy of the record before the trial court, the trial court may well have elected to hold its own evidentiary hearing to cure the defect. Accordingly, we conclude that the issue has been waived.

## PARTICIPATION OF DIRECTOR OF COUNTY PLANNING COMMISSION

The township next argues that the trial court erred when it found that Adrian Merolli, Director of the Luzerne County Planning Commission, was invited to serve as advisor to the committee. Additionally, the township contends that even assuming the trial court's finding is correct, the mere fact that Merolli did not participate in the process necessarily invalidates the incorporation procedure.

■ Section 202(b) of The Borough Code provides in relevant part that "[t]he director of the County Planning Commission shall serve as advisor to the committee." 53 P.S. § 45202(b). The trial court found that "[t]he record further establishes [that] the Borough Advisory Committee, through its Chairman, Raymond Sobota, invited and provided notices to Adrian Merolli, Director of the Luzerne County Planning Commission, to attend the meetings of the Advisory Committee and offer his advice." Following a diligent search of the record, we are unable to find any support whatsoever for the trial court's finding and, accordingly, must agree that this finding is not supported by competent evidence of record.

---

**5.** The township's exceptions to the Report of the Committee raised the following issues:

 1. The Committee excluded representatives of the township from full participation;

 2. The proposed configuration of the borough was excessive for various reasons;

 3. The validity and qualification of the signatures affixed to the original petition;

 4. The adequacy of recreational facilities within the proposed borough;

 5. The question of whether the proposed borough constitute a "harmonious whole."

■ The question remains, however, whether the non-participation of the Director of the County Planning Commission constitutes a fatal defect requiring that the incorporation process be invalidated. We conclude that it does not.

■ The word "shall," although usually mandatory or imperative when used in a statute, may nonetheless be directory or permissive, depending on the legislature's intent. *Tyler v. King,* 344 Pa.Superior Ct. 78, 496 A.2d 16 (1985). When the letter of the statute is clear and unambiguous, the courts are not free to engraft additional verbiage upon it in a supposed effort to pursue its spirit. 1 Pa.C.S. § 1921; *In re Estate of Fox,* 494 Pa. 584, 431 A.2d 1008 (1981). Finally, statutes which relate to the same class of things are in pari materia and shall be construed together, if possible, as one statute. 1 Pa.C.S. § 1932.

Applying these rules of statutory construction to section 202(b), we note that the court "shall establish" a Borough Advisory Committee, which "shall consist of" two residents of the proposed borough, two residents of the existing governmental unit or units and one resident of the county not residing in either area who "shall serve" as chairman of the committee. Section 202(b) also specifically sets forth that the committee "shall be established when a petition is received by the court for the creation of a borough," and that the *members* of such committee "shall be appointed" by the court.

In *Two Ponds, Inc. Appeal,* 87 Pa.Commonwealth Ct. 324, 489 A.2d 939 (1985), a common pleas court declined to appoint a committee and proceeded to conduct an evidentiary hearing on the petition for incorporation. We held this was error and remanded for appropriate proceedings, stating that:

> [W]e read [section 202] to require the court to establish a Borough Advisory Committee whenever an application in the form described in subsection (a) of Section 202 has been filed and to await the Borough Advisory Committee's advice before deciding the issue on the merits.

*Id.* at 329, 489 A.2d at 941.

The language of section 202(b) explicitly sets forth the manner of the selection and appointment of committee mem-

bers. Section 202(c) prescribes the duties of the committee. In contrast, the last sentence of section 202(b) merely provides that the Director of the County Planning Commission "shall serve as advisor to the committee," and does not, as the township suggests, grant the trial court authority to *order* the participation of the director. Neither does it require that the committee itself invite or provide notice to the director to participate in the proceedings of the committee. We shall not engraft these additional requirements onto the statute.

■ Additionally, we do not believe that the director's participation is mandated by section 202(b). Because the township's construction of section 202(b) would result in the imposition of a mandatory duty on the director, it is proper to construe the section in pari materia with statutes which deal with the same subject matter. *Girard School District v. Pittenger*, 481 Pa. 91, 392 A.2d 261 (1978).

The powers and duties of a planning agency are set forth in section 209.1 of the Pennsylvania Municipalities Planning Code (MPC).[6] Section 209.1(a) provides that a planning agency, at the request of the governing body, is *required:* (1) to prepare the comprehensive plan for development and to present it for the consideration of the governing body; and (2) to maintain and keep on file records of its action.

Section 209.1(b) of the MPC provides that a planning agency *at the request of the governing body may* perform other functions and duties, including:

(9) Make recommendations to governmental, civic and private agencies and individuals as to the effectiveness of the proposals of such agencies and individuals.

53 Pa.C.S. § 10209.1(b)(9).

Section 210 of the MPC, 53 P.S. § 10210 further provides that:

6. Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10101–11201. Section 209.1 was added by the Act of June 1, 1972, P.L. ——, *as amended.*

A county planning agency, with the consent of its governing body may perform planning services for any municipality whose governing body requests such assistance and may enter into agreements or contracts for such work.

The MPC, therefore, sets forth both the mandatory and the permissive duties of a planning agency. Those mandatory duties do not include advising a Borough Advisory Committee. The township's construction of section 202(b) would place that section squarely in conflict with the specific sections of the MPC setting forth the powers and duties of the planning agency. It is our duty, however, to construe the statutes so as to give effect to both, if at all possible. *Department of Transportation, Bureau of Driver Licensing v. Campbell*, 138 Pa.Commonwealth Ct. 337, 588 A.2d 75 (1991).

■■■ Such a construction is possible if we construe section 202(b) as merely directory. Hence, a director of a county planning commission is not *required* to participate in the proceedings of a borough advisory committee, but the director may, at the request of or with the consent of the governing body of the county, make recommendations to or perform planning services for the committee. Accordingly, we conclude that the non-participation of the director of the county planning commission is not fatal to the incorporation process.

## MAJORITY OF THE FREEHOLDERS

■■■ Section 202 requires that the petition for incorporation be signed by the "majority of the freeholders residing within the limits of the proposed borough." In the present case, the trial court found that there were 140 property owners within the proposed borough, 108 of whom had signed the petition for incorporation. The township, however, argues that many of the properties were held as tenancies by the entirety. Counting both husband and wife as freeholders, the township contends that the number of resident freeholders was actually 264, requiring at least 133 signatures on the petition.

Initially, we note that The Borough Code does not contain a definition of "freeholder." Such a definition is found, however, in the provisions relating to the annexation of territory by a second class township, section 1 of the Act of July 20, 1953, 53 P.S. § 67501, which provides that:

A majority in interest of owners of undivided interests in any piece of property shall be deemed and treated as one person for the purpose of ascertaining the number of petitioners.

Several early cases *did* hold that where husband and wife are tenants by the entireties, each must be counted as a freeholder for purposes of an annexation petition. *See Appeal of Township of Somerset,* 42 D. & C. 470 (1941); *Ligonier Township Annexation,* 5 D. & C.2d 124 (1955). Later cases concerning annexations, however, uniformly rely on the definition found in 53 P.S. § 67501 to find that a tenancy by the entireties constitutes but a single freehold. *In re Highspire Borough Annexation,* 82 Dauph. 362 (Ct.Qtr.Sess.Pa.1964); *Annexation of Lands in Mount Carmel Township,* 41 D. & C.2d 312 (1966); *Carroll Valley Borough Incorporation (No. 2),* 60 D. & C.2d 536 (1972).

Superior Court first·considered the question in an annexation case brought under section 426 of The Borough Code, 53 P.S. § 45426. *Phoenixville Borough Annexation Case,* 218 Pa.Superior Ct. 205, 275 A.2d 863 (1971). Superior Court concluded that each spouse must be counted as a separate freeholder. *Id.* at 208, 275 A.2d at 865.

Less than four months later, however, this court reached the opposite conclusion in an annexation case also brought under section 426 of The Borough Code. In *Millersville Annexation Case,* 2 Pa.Commonwealth Ct. 587, 279 A.2d 349 (1971), we held that because annexation could be accomplished either under The Borough Code or pursuant to 53 P.S. § 67501, the statutes must be read in pari materia. Accordingly, we applied the definition found in 53 P.S. § 67501 and concluded that tenants by the entirety constitute but one petitioner for the purposes of annexation. In reaching this conclusion, we found that:

On the question of annexation, the Borough Code and the Second Class Township Code are unquestionably 'in pari materia', since they relate to the identical things—annexation by a borough of land in a second class township. Thus, the possibility of construing them as one law must be pursued. Again the Statutory Construction Act provides a solution. Section 563 [now 1 Pa.C.S. § 1933] states that a particular or special provision controls a general provision in the same or another law. If this is so, then it follows that when two statutes deal with the same things, a particular provision in one will control when the other statute is silent as to that matter. Thus, the particular provision in the Second Class Township Code relating to the number of freeholds to be counted in a tenancy by entireties controls and interprets the silence of the Borough Code on that matter.

*Id.* at 592–93, 279 A.2d at 351–52.

Our Supreme Court granted allocatur in *Millersville* because our interpretation was directly in conflict with that of Superior Court. *Millersville Annexation Case*, 447 Pa. 310, 290 A.2d 102 (1972). In affirming the construction given by this court, the Supreme Court stated that "the legislature had to intend that 'freeholders' must be defined in the same way under both statutes." *Id.* at 318, 290 A.2d at 105–06.

Having determined that the definition found at 53 P.S. § 67501 applies to *annexations* filed under The Borough Code, it would now be anomalous to conclude that a different definition applies to borough incorporations, which are also filed pursuant to The Borough Code. Nor are we persuaded by the township's reliance on the Pennsylvania Equal Rights Amendment, Pa. Const. art. I, § 28, which provides that "[e]quality of rights under the law shall not be denied or abridged in the Commonwealth of Pennsylvania because of the sex of the individual." As Judge Moser stated in *Annexation of Lands in Mount Carmel Township:*

In matters of entireties, either spouse presumptively has the power to act for both, so long as the marriage subsists, without any specific authorization, provided the fruits or

proceeds of such action inure to the benefit of both and the estate is not terminated: Wickerham v. Vitori, 345 Pa. 111, 25 A.2d 801, 802. Under this authority, the signature of either spouse on a petition for annexation is counted as representing the freehold interest of the husband and wife as tenants by the entireties: ....

41 D. & C.2d at 315.

■■■ Finally, the township's broad assertions that the rationale underlying these decisions is outdated and runs contrary to current constitutional requirements dealing with individual rights is without merit. Our Supreme Court recently addressed and rejected a direct challenge to the constitutionality of a requirement of property ownership in order to petition for incorporation, finding that the constitutionally critical consideration is who may vote, not who may apply. *In re Borough of New Morgan,* 527 Pa. 226, 238–39, n. 7, 590 A.2d 274, 279–80, n. 7. Because all residents of the area proposed for incorporation are ultimately given the right to vote on the issue, the requirement that only freeholders may sign a petition is not unconstitutional. *Id.*

Accordingly, we conclude that the trial court did not err in counting tenancies by the entireties as a single freehold and in finding that a majority of the freeholders in fact signed the petition for incorporation.

## CONDITIONS FOR INCORPORATION

■■■ Finally, the township contends that the trial court erred in determining that the conditions for incorporation had been met. As noted earlier, section 202(c) of The Borough Code relevantly provides that the committee shall advise the trial court of the desirability of incorporation including, but not limited, to certain factors including the ability to obtain or provide adequate support services, the existing and potential commercial, residential and industrial development of the proposed borough and the financial and tax effect on the proposed borough and existing governmental unit or units. 53 P.S. § 45202(c).

The trial court must decide whether these conditions have been met prior to certifying the question of incorporation to a referendum vote. 53 P.S. § 45202(d).

These factors are largely a codification of factors previously set forth in opinions by our courts. *Borough of Bridgewater Petition*, 87 Pa.Commonwealth Ct. 599, 488 A.2d 374 (1985). Additionally, we have required a consideration of whether the proposed borough is a harmonious whole with common interests an problems which can be properly served by borough government. *Borough of New Morgan*, 127 Pa.Commonwealth Ct. 519, 531, 562 A.2d 402, 408 (1989).

The township reiterates its argument that the trial court's findings, which are in turn based on the committee findings are not supported by competent evidence of record as to the statutory factors. Again, however, we conclude that because this issue was not presented to the trial court, it has been waived.

■ The township did properly preserve the issue of whether the proposed borough constitutes a harmonious whole. We find, however, that the trial court's finding was well within its discretion and is supported by competent evidence of record. Maps filed as exhibits before the committee clearly establish that the area proposed for incorporation constitutes a single community geographically. While it is true that a substantial number of residents, concentrated in one portion of the proposed borough, opposed the incorporation, such opposition does not necessarily prevent the proposed borough from being viewed as a harmonious whole. Indeed, had the incorporation petition sought to exclude this area from incorporation, one suspects that such exclusion could well serve as the basis for the argument that the remaining area did not constitute a harmonious whole for failure to include the "whole" of the community.

Statutes regulating the incorporation of boroughs date back more than a century and a half. The earliest statute does not differ significantly from the present borough code, except that it required that the proposed borough contain a minimum of

300 inhabitants.[7] During all of this time, the discretion as to whether the conditions for incorporation have been met has rested with the courts at the county level. Appellate review of the findings of the trial court has always been narrow. For example, in *Whitehall Borough Incorporation Case*, 358 Pa. 90, 55 A.2d 746 (1947), our Supreme Court held that a decree incorporating a borough will not be disturbed by an appellate court unless its illegality appears on record or an abuse of the lower court's discretion is distinctly charged and shown, as incorporation proceedings involve largely fact issues and questions of expediency. We find no such abuse in the trial court's finding that the proposed borough here constitutes a "harmonious whole."

Although not explicitly argued by the township in this case, the underlying theme in this and other recent cases has been the unspoken suggestion that the present manner of incorporating boroughs is woefully outdated, in that it allows the proliferation of small, disjointed municipalities which make regional land use planning and the coordination of services difficult, if not impossible. The courts, however, are obliged to interpret the law as it is. Any substantive change in that law must come from the legislature, not the judiciary.

We are not blind to the fact that the incorporators in this case availed themselves of virtually every conceivable shortcut, and that additional fact-finding may well have been desirable. The fact remains, however, that the statutory process was followed and that, as to the issues preserved for appeal, the trial court's final decree was well within its discretionary power and is supported by competent evidence. Accordingly,

7. Section 2 of the Act of April 1, 1834, P.L. 163 provided in relevant part:

> The court shall cause the aforesaid application to be laid before the grand jury when in session, and if a majority of the said grand jury after a full investigation of the case shall find, that the conditions prescribed by this act have been complied with, and shall believe, that it is expedient to grant the prayer of the petitioners, they shall certify the same to the court .... But, if the court shall deem further investigation necessary, they may take such order thereon, as to right and justice shall appertain.

we must affirm the trial court's decree incorporating the Borough of Bear Creek Village.

## ORDER

NOW, this 24th day of September, 1992, the final decree of the Court of Common Pleas of Luzerne County, dated November 26, 1991, at No. 4506–C of 1990, granting the petition for incorporation of the Borough of Bear Creek Village is affirmed.