**Thomas BIXLER, Petitioner**

v.

**STATE ETHICS COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 29, 2004.

Decided April 26, 2004.

Linus E. Fenicle, Camp Hill, for petitioner.

Thomas S. Diehl, Harrisburg, for respondent.

BEFORE: COLINS, President Judge, LEADBETTER, Judge and KELLEY, Senior Judge.

OPINION BY Judge LEADBETTER.

Thomas Bixler petitions this court for review of a final adjudication of the State Ethics Commission (Commission) determining that he violated various sections of the Public Official and Employee Ethics Act (Ethics Act), 65 Pa.C.S. §§ 1101–1113, while employed as a South Newton Township Supervisor in Cumberland County, Pennsylvania.

Bixler has served the Township as a Supervisor since March 4, 1997. He also works for the Township as a roadmaster. Further, he has been employed by Keystone Fleet Service, Inc. (Keystone), as a truck mechanic since 1998. On June 13, 2000, at a regular public meeting of the Board of Supervisors, Bixler suggested that the Township vehicles could be taken to Keystone for service.[1] He made this suggestion in response to the fact that the garage that had previously serviced the Township's trucks would no longer do so. The Township solicitor was present at the meeting when Bixler made this suggestion. The Board discussed Bixler's recommendation and then voted unanimously to take the Township's trucks to Keystone for service. There is no dispute that Bixler is not a partner at Keystone, and he received no financial benefit from having the Township's vehicles repaired there. He also did not perform work on the vehicles while they were at Keystone for service. Between June 13, 2000 and December 11, 2001, Keystone received a gross pecuniary benefit of approximately $2550 for servicing the Township's vehicles on multiple occasions. Bixler, along with the other Supervisors, approved the payments to Keystone even though none of the repairs were bid. Two of the invoices were over $500, and Bixler signed one check (for less than $500) that was made payable to Keystone. After subtracting its costs, Keystone realized a net profit of $561.77 for all of its work on the Township's vehicles.

After receiving a signed, sworn complaint, the Commission's Investigative Division initiated a preliminary inquiry into Bixler's actions on March 14, 2002. It informed Bixler of its investigation by letter dated May 13, 2002. The Investigative Complaint was mailed to Bixler on November 7, 2002, after which he filed an Answer, and a hearing was held. The Commission, in its final adjudication, issued Order No. 1290, in which it determined that Bixler violated Section 1103(a) of the Ethics Act, 65 Pa.C.S. § 1103(a), because "he participated in actions of the board of supervisors of South Newton Township as to awarding service contracts and making payments to Keystone Fleet Services, a business where Bixler is employed." The Commission also determined in its order that Bixler violated Section 1103(f) of the Ethics Act, 65 Pa. C.S. § 1103(f), because "Keystone Fleet Services, a business where Bixler is employed, received contracts with South Newton Township in excess of $500 when such contracts were not awarded through an open and public process."[2] The Commission did not order Bixler to pay restitution.[3]

1. According to Ronald Bouch, another Township Supervisor, the Township had two trucks in 2000 and also obtained a van in 2001. Notes of Testimony (N.T.), Testimony of Ronald Bouch, Hearing of May 28, 2003 at 89.

2. The Commission's determination that Bixler violated a third section of the Ethics Act is not at issue here.

■ On appeal to this court, Bixler first argues that he did not violate Section 1103(a) of the Ethics Act because his actions in helping to award service contracts and approve payments to Keystone had only a de minimis economic impact.

Section 1103(a) of the Ethics Act provides: "**Conflict of Interest.**—No public official or public employee shall engage in conduct that constitutes a conflict of interest." Section 1102 of the Ethics Act, 65 Pa C.S. § 1102, defines "conflict" or "conflict of interest" as:

> Use by a public official or public employee of the authority of his office or employment or any confidential information received through his holding public office or employment for the private pecuniary benefit of himself, a member of his immediate family or a business with which he or a member of his immediate family is associated. The term does not include an action having a de minimis economic impact or which affects to the same degree a class consisting of the general public or a subclass consisting of an industry, occupation or other group which includes the public official or public employee, a member of his immediate family or a business with which he or a

member of his immediate family is associated.

"De minimis economic impact" is defined in Section 1102 as: "An economic consequence which has an insignificant effect."

The Commission determined that Bixler violated Section 1103(a) of the Ethics Act when he used the authority of his office [4] for the private pecuniary benefit of Keystone, a "business with which he is associated" as an employee.[5] According to the Commission, this private pecuniary benefit "consist[ed] of the profits that Keystone made in servicing the township vehicles." Commission Final Adjudication (mailed September 29, 2003) at 13. However, the Commission also reached the following conclusion:

> [I]t appears that Bixler was merely trying to arrange to have a continuation of the servicing of township vehicles after Coon's Garage indicated that it would no longer do so. Further, even though Keystone is a business with which Bixler is associated, we note that he did not receive any bonuses or commissions for any additional business that he brought to Keystone. *In short, we believe that Bixler was motivated to help the town-*

---

3. Section 1109(a) of the Ethics Act, 65 Pa. C.S. § 1109(a), provides that "[a]ny person who violates" Section 1103(a) "commits a felony and shall, upon conviction, be sentenced to pay a fine of not more than $10,000 or to imprisonment for not more than five years, or both." Section 1109(b) of the Ethics Act provides that "[a]ny person who violates the provisions of" section 1103(f) "commits a misdemeanor and shall, upon conviction, be sentenced to pay a fine of not more than $1,000 or to imprisonment for not more than one year, or both." In addition to other penalties that may be imposed under the Ethics Act, Section 1107(15) of the Act, 65 Pa.C.S. § 1107(15), empowers the Commission to "[m]ake recommendations to law enforcement officials either for

criminal prosecution or dismissal of charges...."

4. "Authority of office or employment" is defined in Section 1102 of the Ethics Act as: "The actual power provided by law, the exercise of which is necessary to the performance of duties and responsibilities unique to a particular public office or position of public employment."

5. Section 1102 defines the phrase "[b]usiness with which he is associated" as: "Any business in which the person or a member of the person's immediate family is a director, officer, owner, employee or has a financial interest."

*ship rather than to obtain personal financial gain.*

*Id.* at 14 (emphasis added).

Given all of the circumstances presented here, we agree that Bixler's actions fell within the de minimis exclusion of Section 1103(a). In *Kraines v. Pennsylvania State Ethics Commission,* 805 A.2d 677, 680 (Pa.Cmwlth.2002), *petition for allowance of appeal denied,* 572 Pa. 761, 818 A.2d 506 (2003), the Commission issued a final adjudication determining that Judith Kraines, the Berks County Controller, violated Section 1103(a) of the Ethics Act "by using the authority of her office for the private pecuniary benefit" of her husband, board-certified forensic pathologist, Dr. Neil Hoffman. Kraines had "particIpat[ed] in the approval process of payments to her husband for pathology fees which were in excess [of] the amounts set forth in the 1989 contract between Dr. Hoffman and the County." *Id.* This court reversed the Commission's determination that Kraines had violated Section 1103(a) of the Ethics Act. Among our reasons was the fact that "the payments received by her husband had an insignificant adverse economic impact on the County and, therefore, should have been classified as *de minimis.*" *Id.* at 682. In reaching this conclusion, we noted, *inter alia,* that Dr. Hoffman was the most qualified pathologist in the county and that the fees he charged represented a savings to Berks County when compared with fees charged by other pathologists in South Central Pennsylvania. *See also Salem Township Mun. Auth. v. Township of Salem,* 820 A.2d 888, 893 (Pa.Cmwlth.2003) (where we held that the actions of two Township Supervisors in voting to dissolve the municipal authority did not amount to a conflict of interest because "[s]ewage construction and repair constituted, at most, a very minor part of [the Supervisors'] construction businesses)."

Here, the Commission found that "Keystone realized a gross private pecuniary benefit of $2,548.10 and a net profit of $561.77 as a result of repairs to South Newton Township vehicles." Finding of Fact No. 34, Commission Final Adjudication (mailed September 29, 2003) at 7. Anthony Buziuk, one of Keystone's owners, testified that his gross sales in 2000 and 2001 were "about 1.9 million" dollars. N.T., Hearing of May 28, 2003 at 55. Buziuk also testified that his labor rate was $39.50 in 2000 and 2001, and that, because he serviced a lot of local trucking companies, he charged more of an "in-house labor rate," while other dealers in the area "doing heavy-duty truck repair would probably be in the range of $75 to $90 an hour. . . ." N.T. at 48–49. Buziuk further acknowledged that his company's work on the Township vehicles "was probably miniscule compared to the amount of work we generate." N.T. at 57–58. Moreover, Ronald Bouch, the Chairman of the South Newton Township Board of Supervisors, testified that both the Township's expenditures and receipts in 2000 and 2001 exceeded $200,000. N.T. at 92. Therefore, we hold that the $561.77 net profit received by Keystone as a result of Bixler's action had an insignificant effect on both Keystone and the Township and was therefore de minimis in nature.[6]

■ Bixler next argues that he did not violate Section 1103(f) of the Ethics Act because he (as opposed to Keystone) did not enter into any contract with South Newton Township to repair its vehicles. We agree. Section 1103(f) of the Ethics Act provides in relevant part:

---

6. Due to our analysis, we need not consider Bixler's alternative assertion that he did not violate Section 1103(a) because he fell under the "subclass" exception.

*Contract.*—*No public official or public employee or his spouse or child or any business in which the person or his spouse or child is associated shall enter into any contract valued at $500 or more with the governmental body with which the public official or public employee is associated* ..., unless the contract has been awarded through an open and public process, including prior public notice and subsequent public disclosure of all proposals considered and contracts awarded. In such a case, the public official or public employee shall not have any supervisory or overall responsibility for the implementation or administration of the contract....

(Emphasis added.)

■ The Commission asserts that Bixler does not have to be a party to the contract; instead, "[i]t is only necessary that the parties include the governmental body with which the public official is associated, and a business with which he is associated as an employee. Furthermore, the contract must be in excess of $500 and not be awarded through a public process...." Commission's brief at 21. While we agree that a violation is established where such a contract has been made, we fail to see how Bixler has violated subsection (f) where he is not a party to the contract (nor even a principal of the contracting business),[7] and where entering into the contract is the conduct prohibited. Where the language of a statute is clear and free from all ambiguity, the courts may not impose additional verbiage upon that statute in a supposed attempt to pursue its spirit. *In re Bear Creek Vill.,* 150 Pa.Cmwlth. 595, 616 A.2d 111, 117 (1992); Section 1921(b) of the Statutory Construction Act, 1 Pa.C.S. § 1921(b). Moreover, the statutory scheme does not ignore the participation of the public official in a situation like this; rather, it deals with his or her conduct in Section 1103(a). The Commission has cited no case law to support its construction of Section 1103(f), and we conclude that it is not supportable.

For all of the above reasons, the order of the State Ethics Commission is reversed.

### ORDER

AND NOW, this 26th day of April, 2004, the order of the State Ethics Commission in the above-captioned matter is hereby REVERSED.

---

7. We do not here address the situation where a public official or employee is a principal of a business that has entered into a contract in violation of Section 1103(f).