David SEROPIAN, Petitioner

v.

STATE ETHICS COMMISSION, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 22, 2010.

Decided April 7, 2011.

Julie A. Aquino, Pittsburgh, for petitioner.

Brian D. Jacisin, Harrisburg, for respondent.

BEFORE: COHN JUBELIRER, Judge, and LEAVITT, Judge, and BUTLER, Judge.

OPINION BY Judge COHN JUBELIRER.[1]

David Seropian (Seropian) petitions for review of the December 29, 2009, and April 21, 2010, Orders of the State Ethics Commission (Commission). In the December 29, 2009, Order (December Order), the Commission found, in relevant part, that Seropian violated Section 1103(a) of the Public Official and Employee Ethics Act (Ethics Act), 65 Pa.C.S. § 1103(a), by using his work computer for non-work-related activities. In its April 21, 2010, Order (April Order), the Commission denied Seropian's Request for Reconsideration of the December Order (Reconsideration Request). On appeal, Seropian asserts, *inter alia*, that the Commission had jurisdiction to issue the April Order and that, although his appeal of the December Order was untimely, he is entitled to a *nunc pro tunc* relief because there was a breakdown in the administrative process. Seropian further argues that the Commission erred and/or abused its discretion in finding that he violated Section 1103(a) of the Ethics Act.

## I. Overview

Seropian worked as a business manager for the McKeesport Area School District (District) in Allegheny County since October 1997. On or about June 7, 2007, the Commission received a complaint asserting that Seropian violated the Ethics Act by using the authority of his public position

---

1. This matter was reassigned to the authoring judge on December 30, 2010.

for private pecuniary gain when he used his position to solicit campaign contributions from some of the District's vendors for his candidacy for school board director of the West Jefferson School District.[2] The complaint also alleged that Seropian used District facilities and equipment to solicit votes and contributions for his campaign. The Commission's Investigative Division (ID) notified Seropian on September 5, 2007, that it was commencing an investigation into the allegations. After granting the ID two extensions to continue its investigation pursuant to Section 1108(c) of the Ethics Act, 65 Pa.C.S. § 1108(c) (authorizing the Commission to grant up to two 90–day extensions to the ID), the Commission informed Seropian that it was amending the allegations against him to include his use of District facilities and equipment for the benefit of his position as the manager of a baseball team while being compensated by the District. The ID issued an investigative complaint on August 29, 2008, to which Seropian filed an answer. Seropian elected to proceed pro se in February 2009. The Commission held evidentiary hearings from July 13 through July 15, 2009.

Thereafter, the Commission issued the December Order, finding that Seropian violated Section 1103(a) of the Ethics Act by using District facilities and equipment for his personal benefit. The Commission held that Seropian violated Section 1103(a) of the Ethics Act by using his District-owned computer to: send and receive approximately thirty emails regarding his baseball team and save approximately forty-nine documents related to that team between February 2, 2004, and March 23, 2005; send a mass e-mail soliciting votes on May 14, 2007, and save several documents related to his political campaign between April 10, 2007, and September 18, 2007; and access, during his normal work hours, nonwork-related websites for a total of 721 minutes for the 2002–2003 school year and 59 minutes for the 2003–2004 school year.[3] (December Order at 39–42.) The Commission ordered Seropian to pay restitution in the amount of $640.11, which represented the compensation Seropian received for the 780 minutes he accessed non-work-related materials on his District-owned computer during his normal working hours in the 2002–2003 and 2003–2004 school years. (December Order at 42.) However, the Commission held that Seropian did not violate Section 1103(a) by soliciting campaign donations from District vendors either because there was no basis to conclude that he solicited or requested the donations or, in one instance, because the pecuniary benefit received from the donation fell within the de minimis exclusion to the Ethics Act's "conflict of interest" provision. *See* Section 1102 of the Ethics Act, 65 Pa.C.S. § 1102, (specifically excluding from the definition of "conflict of interest" those actions that have de minimis economic impact).

## II. Reconsideration Petition and Appeal to this Court

 On January 26, 2010, Seropian filed with the Commission his Reconsidera-

---

**2.** Seropian joined three other candidates to create a campaign committee, "Candidates for a New Direction," which collected campaign contributions on their behalf. (December Order at 6–7, Findings of Fact (FOF) ¶¶ 15, 16, 18.) It was to this group that various District vendors donated.

**3.** We note that, although the Commission found that Seropian violated the Ethics Act by using the District-owned computer for matters relating to his candidacy and his baseball team, the Commission made no calculations regarding the amount of pecuniary gain Seropian received as a result of these activities. Instead, in calculating Seropian's pecuniary gain, the Commission focused solely on the 780 minutes during which Seropian accessed non-work-related websites.

tion Request of the December Order. (Letter from Seropian to Commission (January 26, 2010), R.R. at 78a–87a.) The Commission mailed Seropian a letter, dated February 2, 2010, indicating that it received his Reconsideration Request, oral argument would be held on the Reconsideration Request, and the ID could file an answer by February 22, 2010. (Letter from Commission to Seropian (February 2, 2010), R.R. at 88a.) The Commission notified Seropian on February 18, 2010, that oral argument on the Reconsideration Request would be held on March 25, 2010. (Letter from Commission to Seropian (February 18, 2010), R.R. at 89a.) After the hearing, the Commission issued the April Order and opinion, purporting to deny reconsideration, but nonetheless explaining why it did not err or abuse its discretion in the December Order. Seropian, now represented by counsel, filed with this Court a Petition for Review on May 19, 2010, challenging both the December Order and the April Order.[4] The Commission filed a Motion to Quash Seropian's Petition for Review of the December Order as untimely, which this Court granted by Order dated June 1, 2010. This Court denied reconsideration of its June 1, 2010, Order by Order dated June 17, 2010. The June 17, 2010, Order also stated:

In light of this Court's decision in *City of Philadelphia Police Department v. Civil Service Commission*, 702 A.2d 878

(Pa.Cmwlth.1997), the parties shall discuss in their principal briefs on the merits respondent's jurisdiction to act on the request for reconsideration after the appeal period had passed and respondent's order of December 29, 2009 became final. *See* Pa. R.A.P. 1701(b)(3).

*Seropian v. State Ethics Commission*, (Pa. Cmwlth. No. 948 C.D.2010, filed June 17, 2010). Thereafter, Seropian filed his brief with this Court arguing, *inter alia*, the merits of the December Order and asserting that this Court should allow him to appeal the December Order based on his entitlement to *nunc pro tunc* relief. The Commission filed a Motion to Quash or Strike portions of Seropian's brief that purported to appeal the December Order.[5] This Court denied the Commission's Motion on September 16, 2010, stating that "[i]n light of this Court's order dated June 17, 2010, the arguments in petitioner's brief relative to the Commission's [December Order] shall be reviewed by the Court only in the event that petitioner prevails on his argument relating to the Commission's reconsideration procedure." *Seropian v. State Ethics Commission*, (Pa. Cmwlth. No. 948 C.D.2010, filed September 16, 2010).

Seropian makes two arguments regarding the Commission's reconsideration procedures that would allow this Court to review the December Order and April Order: (1) that the Commission implicitly

---

4. Where an agency, like the Commission, denies a request for reconsideration, this Court's review is limited to whether the agency abused its discretion. *Columbia Gas of Pennsylvania, Inc. v. Pennsylvania Public Utility Commission*, 112 Pa.Cmwlth. 611, 535 A.2d 1246, 1248 (1988). In reviewing the Commission's December Order, this Court's scope of review "is limited to determining whether necessary factual findings are supported by substantial evidence, an error of law has been committed or constitutional rights have been violated." *R.H. v. State Eth-*

*ics Commission*, 673 A.2d 1004, 1009 n. 11 (Pa.Cmwlth.1996).

5. Seropian's Brief contained a Statement of Issues, which included issues associated with the December Order and the issue of whether the Court could consider both the December and April Orders. The Commission, on August 3, 2010, filed an Application to Strike Seropian's Statement of Issues related to the December Order, which this Court denied on August 18, 2010.

granted his Reconsideration Request through its conduct; and (2) that there was a breakdown in the administrative process entitling Seropian to *nunc pro tunc* relief.

▉ Seropian first argues that the Commission's actions in this case essentially constituted a grant of reconsideration such that the Commission retained jurisdiction. The Commission responds that the April Order should be vacated on the grounds that it was void *ab initio* because the Commission did not have jurisdiction to issue the April Order because almost four months had passed since the issuance of the December Order and it did not expressly grant the Reconsideration Request. We agree with the Commission that it did not have jurisdiction to issue the April Order almost four months after it issued the December Order absent an express grant of reconsideration. *See Schoff v. Richter*, 386 Pa.Super. 289, 562 A.2d 912, 913 (1989) (stating that in order for an order granting reconsideration to be effective, the order must, *inter alia*, expressly grant reconsideration). Accordingly, we vacate the April Order.

▉ However, this leaves Seropian's alternative argument that he is entitled to *nunc pro tunc* review of the December Order because the Commission's reconsideration procedures, the Commission's actions, and the wording of the December Order demonstrate a breakdown in the administrative process. For support, Seropian points to the instructions for seeking review that the Commission provided in the December Order, as well as the Commission's actions in: sending the February 2, 2010, letter indicating that it was scheduling argument; permitting the ID to file an answer by February 22, 2010; holding oral argument on March 25, 2010, at which both Seropian and the ID participated; and issuing the April Order that

"denied" the Reconsideration Request, notwithstanding the fact that the Commission issued an opinion that reviewed the merits of the December Order and rejected all of the bases Seropian asserted for reconsideration.

In response to Seropian's request for *nunc pro tunc* relief, the Commission asserts that Seropian is not entitled to such relief because he has failed to establish that the Commission perpetrated any fraud in issuing the December Order. (Commission's Br. at 23.) The Commission contends that this Court has twice denied Seropian's request for appellate review of the December Order and that, pursuant to *West Penn Power Company v. Goddard*, 460 Pa. 551, 556, 333 A.2d 909, 912 (1975), "the time for taking an appeal cannot be extended as a matter of grace." According to the Commission, it had no legal obligation to set forth the procedures for filing an appeal from the December Order and Seropian's failure to understand the time deadlines for filing an appeal is insufficient to establish that the Commission perpetrated a fraud such that Seropian would be entitled to *nunc pro tunc* relief.

▉ The Commission is correct that "appeal periods at the administrative level are jurisdictional and may not be extended as a matter of grace." *Aliseo v. Crime Victim's Compensation Board*, 660 A.2d 224, 225 (Pa.Cmwlth.1995). However, "the extension of such periods may be granted where there is fraud **or a breakdown in the administrative process**." *Id.* at 225–26 (emphasis added). Thus, fraud is not the only reason to grant *nunc pro tunc* relief. Furthermore, the Commission is correct that due process "does not even require an administrative agency to provide a party with notice of the right to appeal the agency's decision when the agency or the Legislature ... has provid-

ed a duly published procedure for a hearing or appeal after such order." *Walker v. Unemployment Compensation Board of Review,* 33 Pa.Cmwlth. 438, 381 A.2d 1353, 1354 (1978). This Court recognized in *Walker,* however, that "notice of appeal procedures supplied by an administrative agency which mislead[ ] a party and result[ ] in the filing of an untimely appeal may furnish adequate grounds for a *nunc pro tunc* appeal of the agency's decision." *Id.* This latter principle was reiterated in *Monroe County Board of Assessment Appeals v. Miller,* 131 Pa.Cmwlth. 538, 570 A.2d 1386, 1388 (1990), in which this Court stated that "an appeal *nunc pro tunc* may be granted where a litigant is unintentionally misled by officials as to the proper procedure to be followed."

The December Order provided Seropian with the following instructions for seeking review if he disagreed with the Commission's decision:

> This adjudication of the [Commission] is issued under the Ethics Act and will be made available as a public document thirty days after the mailing date noted above. However, reconsideration may be requested. Any reconsideration request must be received at this Commission within thirty days of the mailing date and must include a detailed explanation of the reasons as to why reconsideration should be granted in conformity of 51 Pa.Code § 21.29(b). A request for reconsideration will not affect the finality of this adjudication but will defer its public release pending action on the request by the Commission.

(December Order at 1.) These instructions are consistent with the Ethics Act's and the Commission's reconsideration procedures; however, they provide a confusing description of those procedures. The Ethics Act addresses the finality of its orders, reconsideration, and the appeals process as

follows. Sections 1108(f) and 1108(i) state, in pertinent part:

> (f) Final order.—Within 30 days of the receipt by the commission of the hearing record or, if no hearing is to be held, within 30 days of the receipt by the commission in the response to the findings report, the commission shall issue an order which shall be final. Upon receipt of a final order, the subject shall have the right to file a petition for reconsideration in accordance with the regulations of the commission.
>
> . . . .
>
> (i) Appeal.—Any person aggrieved by an opinion or order **which becomes final in accordance with the provisions of this chapter** who has a direct interest in such opinion or order shall have the right to appeal therefrom in accordance with law and general rules.

65 Pa.C.S. § 1108(f) and (i) (emphasis added). Section 21.29 of the Commission's regulations provides:

> § 21.29. Finality; reconsideration.
>
> (a) An order disposing of an investigation **will be a final order when issued.** Public release of the order will occur 30 days after the date of issuance, unless reconsideration is requested within that 30-day time period.
>
> (b) Any party may ask the Commission to reconsider an order or opinion **within 30 days of service of the order or opinion.** The requestor shall present a detailed explanation setting forth the reason why the order or opinion should be reconsidered.
>
> (c) **A request for reconsideration filed with the Commission will delay the public release of an order, but will not suspend the final order unless reconsideration is granted by the Commission.**

(d) A request for reconsideration may include a request for a hearing before the Commission.

. . . .

(f) **If the Commission grants reconsideration[,]** the Commission may do one or more of the following:

(1) **Order new hearings.**

(2) **Schedule and conduct oral argument.**

(3) Take other action **or issue an order or opinion in final disposition of the case.**

(g) Pending reconsideration or request for reconsideration, an order will remain confidential.

. . . .

(i) This section supersedes 1 Pa.Code §§ 35.231–35.233 and 35.241 (relating to reopening of record; and application for rehearing or reconsideration).

51 Pa.Code § 21.29 (emphasis added).

A close reading of the Commission's regulations reveals an ambiguity with regard to the effect of a request for reconsideration as described in subsection (c). The regulation states that a request for reconsideration "will not suspend the final order *unless* reconsideration is granted." 51 Pa. Code § 21.29(c) (emphasis added). It would appear, then, that if reconsideration *is* granted, then the final order will be "suspended." 51 Pa.Code § 21.29(c). Moreover, neither the Ethics Act nor the Commission's regulations expressly indicates how long the Commission retains jurisdiction to grant reconsideration thereby "suspending" the finality of a challenged order. Such omission is problematic where an aggrieved party's appeal

rights under Section 1108(i) are based on an "order which becomes final in accordance with the provisions of the" Ethics Act, 65 Pa.C.S. § 1108(i), but the Commission's regulations appear to allow the Commission to suspend a final order upon the grant of reconsideration without any time restrictions, thereby extending the appeal period in which to challenge the underlying order.

The Commission's reconsideration regulations are in sharp contrast to other statutory and regulatory reconsideration procedures. For example, Section 35.241 of the General Rules of Administrative Practice and Procedure (GRAPP), 1 Pa.Code § 35.241, which would otherwise apply had Section 21.29 of the Commission's regulations not superseded it,[6] provides an aggrieved party with fifteen days to file a reconsideration request and the agency with thirty days from the filing of the reconsideration request to act on that request when a petition for review has not been filed. In contrast, when a petition for review has been filed, the agency has only thirty days from the entry of the underlying order to grant reconsideration before losing jurisdiction. 1 Pa.Code § 35.241(e); Pa. R.A.P. 1701(b)(3). Thus, pursuant to the GRAPP, an agency could have as many as 45 days from the issuance of its order to grant reconsideration without being divested of jurisdiction where a petition for review is not filed. In contrast to the GRAPP's procedures, Section 5505 of the Judicial Code, 42 Pa.C.S. § 5505, expressly states that "[e]xcept as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within [thirty] days after

---

**6.** The GRAPP defines the general rules of practice and procedure before Commonwealth agencies, except where an applicable statute provides inconsistent rules or an agency promulgates regulations setting forth rules

that are inconsistent with the GRAPP. 1 Pa. Code § 31.1; *Tully v. Department of Public Welfare,* 727 A.2d 1219, 1221 n. 6 (Pa. Cmwlth.1999).

its entry, . . . if no appeal from such order has been taken or allowed." *Id.* Thus, under the Judicial Code, even where an appeal is not filed, a court's jurisdiction to modify or rescind its orders lasts only thirty days after the entry of the order.

Despite its conduct in this matter, which indicates that the Commission believed it had jurisdiction to act on Seropian's Reconsideration Request, the Commission now takes the position that, regardless of whether a petition for review is filed, it is divested of jurisdiction thirty days after the mailing of the underlying order and cannot grant reconsideration after that period expires.[7] However, the Commission's reconsideration procedures do not clearly reflect this. Reading the Commission's regulations, an aggrieved party would not know that the Commission had any time limits on its jurisdiction to grant reconsideration. Nor is that information included in the notice sent with a final order advising the parties that they have thirty days to request reconsideration. Thus, the Commission's regulations and the notice sent with a final order could lead an aggrieved party to believe that the Commission has an undefined amount of time to act on a reconsideration request and, ultimately, to "suspend" the finality of the underlying order. This results in an aggrieved party believing that he or she can file a reconsideration request on the thirtieth day attempting to seek review and suspend the finality of a challenged order, not knowing that, although the Commission's regulations allow for such filings, the Commission's authority to act on that request beyond that period is questionable.

The Commission's position, in association with its regulations, and the actions that occurred in this case, created a breakdown in the administrative process. We conclude that there was a breakdown in the administrative process here because: the agency's procedures are ambiguous; the agency, itself, acted on the Reconsideration Request in a manner that is inconsistent with its argument to this Court; and Seropian, who followed the procedures established by the agency, was unable to obtain the very relief purported to be available under those procedures. Furthermore, to the extent that the Commission asserts that Seropian's failure to understand the deadlines associated with seeking review of the December Order does not entitle him to *nunc pro tunc* review, we disagree. We believe that the Commission's regulations, as applied in this case, were unclear and inconsistent as to the Commission's authority and the consequences of its December Order.

For the foregoing reasons, we conclude that there was a breakdown in the administrative process that unintentionally misled Seropian as to the proper procedure to be followed to obtain review of the Commission's December Order, which held that he violated Section 1103(a) of the Ethics Act. This led to Seropian's belief that, pursuant to the Commission's procedures and actions, it had granted reconsideration and suspended the finality of the December Order. This, in turn, led to the untimely filing of his Petition for Review of that determination to this Court. Thus, in accordance with *Miller* and *Walker*, we hold that Seropian is entitled to *nunc pro tunc* relief. *Miller*, 570 A.2d at 1388; *Walker*, 381 A.2d at 1354. Because we hold that

---

7. We presume that the Commission's current position is of recent formation, most likely based on this Court's June 17, 2010, Order bringing the jurisdictional issue to its attention. If this position is not new, we question

why the Commission, knowing that it was divested of jurisdiction as of January 28, 2010, proceeded as though it had jurisdiction over the Reconsideration Request, given the time and expense to all involved.

Seropian is entitled to *nunc pro tunc* relief as a result of the Commission's actions and its reconsideration procedures in this matter, we conclude that Seropian has "prevail[ed] on his argument relating to the Commission's reconsideration procedure," *Seropian v. State Ethics Commission,* (Pa. Cmwlth. No. 948 C.D. 2010, filed September 16, 2010), and, therefore, we will review the arguments set forth in Seropian's brief on the merits of his challenge to the December Order.

### III. Merits of Seropian's Petition for Review

Seropian asserts multiple allegations of legal error and/or abuse of discretion regarding the December Order. Seropian argues that the Commission erred and/or abused its discretion by: (1) concluding that, were it not for the *de minimis* nature of a donation from a particular District vendor, Seropian would have violated Section 1103(a) of the Ethics Act and not deleting certain factual "findings" contained in the December Order that pertained to a charge that was *nolle prossed;* (2) concluding that Seropian's conduct was not *de minimis* and, as such, constituted a violation of Section 1103(a); (3) erring in calculating the amount of restitution owed; (4) reviewing conduct that occurred outside the five-year statute of limitations period set forth in Section 1108(m), 65 Pa. C.S. § 1108(m); and (5) issuing an order that did not indicate that at least four members of the Commission found that Seropian violated the Ethics Act.

■ Section 1103(a) provides that "no public official or public employee shall engage in conduct that constitutes a conflict of interest." 65 Pa.C.S. § 1103(a). The Ethics Act defines "conflict of interest" as "[u]se of a public official or public employee of the authority of his office or employment ... for the private pecuniary benefit

of himself." 65 Pa.C.S. § 1102. Section 1102 excludes from the definition of "conflict of interest" an action that has "de minimis economic impact." *Id.* "De minimis economic impact" is defined as "[a]n economic consequence which has an insignificant effect." 65 Pa.C.S. § 1102. The Commission bears the burden of proving a violation of the Ethics Act. *Pulice v. State Ethics Commission,* 713 A.2d 161, 162 (Pa. Cmwlth.1998). In order to find a violation of the Ethics Act, at least four members of the Commission must find clear and convincing proof of a violation. Section 1108(g) of the Ethics Act, 65 Pa.C.S. § 1108(g). Clear and convincing proof is evidence that is "so clear, direct, weighty, and convincing that it enables the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts at issue." *In re Adoption of Charles E.D.M., II,* 550 Pa. 595, 601, 708 A.2d 88, 91 (1998) (quoting *In re Adoption of Atencio,* 539 Pa. 161, 166, 650 A.2d 1064, 1066 (1994)).

■ Seropian first argues that the Commission erred by concluding that, if it were not for the *de minimis* nature of the donation by Gerald Moore (Moore), President of Nutrition, Inc., a District vendor, to Seropian's candidacy for school board director, Seropian would have violated Section 1103(a). The Commission concluded that Seropian had used his position to solicit a donation from Moore because Seropian requested the donation while having lunch with Moore, but concluded that the pecuniary benefit from the donation was *de minimis* and, therefore, did not constitute a violation of Section 1103(a). Seropian further argues that the Commission should have deleted any references in the December Order to allegations of facts, or factual "findings," that related to certain charges against him that were ultimately

*nolle prossed.*[8] With regard to these two arguments, the Commission asserts that the December Order was not adverse to Seropian in these regards, i.e., that such conduct did **not** violate the Ethics Act and, therefore, Seropian is not aggrieved and cannot appeal these specific findings. We agree with the Commission.

It is well settled that a party must be aggrieved in order to appeal a final governmental determination. *Shaulis v. State Ethics Commission*, 574 Pa. 680, 690, 833 A.2d 123, 129 (2003). Indeed, Section 1108(i) specifically requires that a person be "aggrieved by an opinion or order which becomes final." 65 Pa.C.S. § 1108(i). Here, the Commission held that Seropian's conduct with regard to Moore's contribution was not a violation of the Ethics Act as it did not constitute a "conflict of interest." Notwithstanding the Commission's reasoning for this determination, Seropian is not aggrieved by a determination that found that he did **not** violate the Ethics Act.

Further, to the extent that Seropian claims that the Commission should have deleted the findings related to the *nolle prossed* allegation, "[i]t is an elementary rule of appellate practice that one does not appeal a finding of fact of a tribunal but, rather, the order of the tribu-

nal." *Almeida v. Workers' Compensation Appeal Board (Herman Goldner Company)*, 844 A.2d 642, 644 (Pa.Cmwlth.2004). Inasmuch as this particular charge was *nolle prossed,* Seropian prevailed and is not aggrieved by the Commission's December Order in this regard. Thus, Seropian cannot appeal or challenge these specific findings of fact in and of themselves. *Id.* at 644–45.

Seropian next challenges the Commission's determination that his conduct related to the use of his District-owned computer was not *de minimis* and, therefore, constituted a conflict of interest under Section 1103(a) and *Bixler v. State Ethics Commission*, 847 A.2d 785, 788 (Pa. Cmwlth.2004). According to Seropian, his use of his District-owned computer for non-work-related activities for 780 minutes during the 2002–2003 and 2003–2004 school years, which resulted in the Commission ordering him to reimburse the District $640.11, clearly fell within the *de minimis* exclusion to the definition of "conflict of interest." [9] The Commission responds that Seropian's conduct is not *de minimis* because the 780 minutes of non-work-related computer usage represents fifty-two minutes per month. The Commission argues that it properly held that the amount it ordered Seropian to pay as restitution,

8. The ID alleged that Seropian failed to disclose gifts received from a District vendor that valued in excess of $250 on his statements of financial interest filed for 2002 and 2006. (December Order at 17–19, FOF ¶¶ 84–91.)

9. Seropian argues that whether or not he violated the District's technology policies is a matter that is between himself and his employer. Moreover, he argues that the Commission's repeated references to the specific websites he visited is irrelevant to the determination of conflict of interest, as the question is whether his computer usage was work related or not, and whether such conduct

resulted in pecuniary gain for Seropian. We agree with Seropian that the question before the Commission was whether Seropian received a pecuniary gain from using his District-owned computer for non-work-related activities during his working hours and that it is irrelevant to that determination to consider the specific non-work-related websites or activities Seropian accessed or engaged in. Seropian is subject to the District's technology policy, which sets forth specific sanctions for violations of that policy. The mere fact that there was a potential violation of the District's technology policy does not necessarily rise to the level of a violation of the Ethics Act.

$640.11, is not *de minimis* because it exceeded the amount this Court held as *de minimis* in *Bixler*, $561.77. *Bixler*, 847 A.2d at 788. For the following reasons, we agree with Seropian.

To support its decision, the Commission points to the fact that Seropian used the District's computer for personal, non-work-related purposes for approximately fifty-two minutes per month during the 2002–2003 and 2003–2004 school years. However, this equates to slightly more than two minutes per day based on twenty-three working days per month. Although we recognize the Commission's discretion in interpreting the Ethics Act and appreciate its zeal, we cannot say that Seropian's use of his government-owned computer for approximately two minutes per day, for personal reasons that did not otherwise produce income or financial benefit to Seropian, is more than a *de minimis* action or that such conduct is a violation of the Ethics Act. Instead, we conclude

that such use is incidental to his normal, work-related usage of the computer. Section 1101.1 of the Ethics Act states that its purpose is to "strengthen the faith and confidence of the people of this Commonwealth in their government, ... [and] declare[ ] that the people have a right to be assured that the financial interests of holders of or nominees or candidates for public office do not conflict with the public trust." Section 1101.1 of the Ethics Act, 65 Pa. C.S. § 1101.1. We neither believe that Seropian's incidental usage of his District-owned computer in this manner violates the "faith and confidence of the people" nor "conflict[s] with the public trust." *Id.* Thus, we conclude that Seropian's action in using his District-owned computer for approximately two minutes per day as described above over a period of fifteen months falls within the *de minimis* exclusion to the definition of conflict of interest.[10] Accordingly, we find that the Com-

---

10. Our conclusion here is consistent with our decision in *Bixler*. In that case, this Court held that a township supervisor did not violate Section 1103(a) of the Ethics Act by suggesting that the township have its vehicles serviced at the garage where the township supervisor worked because the township supervisor did not obtain any pecuniary benefit from the work and the garage's net profit of $561.77, which directly represented the amount of pecuniary gain the garage made from the township supervisor's actions, fell within the *de minimis* exclusion. *Bixler*, 847 A.2d at 786–88. Here, the Commission calculated the amount of Seropian's pecuniary gain based on the amount of work time during which he used his computer for nonwork-related activities, which resulted in an alleged pecuniary gain of $640.11. The Commission calculated Seropian's hourly wage by using a forty-hour work week; however, in doing so, the Commission disregarded the hours that Seropian was required to work outside his regular hours, such as the time spent attending school board meetings. (December Order at 13, FOF ¶¶ 64, 110–111.) The Commission contends that, because the amount it calculat-

ed is more than the amount of pecuniary gain in *Bixler*, the *de minimis* exclusion is inapplicable. Initially, we note that *Bixler* does not set a bright-line determination as to what constitutes a *de minimis* amount for the purposes of this exclusion in every case, nor does our holding in this matter establish that $640.11 is now "the" *de minimis* amount. These matters are highly fact specific and must be considered on a case by case basis.

Moreover, we question the relationship between Seropian's alleged violations and the method the Commission used to calculate Seropian's pecuniary gain and restitution resulting from those alleged violations. Seropian's alleged violations of the Ethics Act involved his personal use of the District's facilities and equipment, i.e., his computer, but the Commission calculated Seropian's pecuniary benefit and restitution based, in essence, on Seropian's *use of his work time* on the non-work-related matters. The Ethics Act indicates that the pecuniary gain, as well as any damages or restitution ordered to be paid, must result from the violation. *See* Sections 1107(13) (authorizing the Commission to order "restitution plus interest of that gain"), and 1109(c)

mission erred in holding that Seropian's actions violated Section 1103(a) of the Ethics Act.[11]

## IV. Conclusion

Accordingly, the Commission's April Order is vacated; however, Seropian's Petition for Review of the December Order is hereby reinstated *nunc pro tunc.* Having reviewed the merits of Seropian's Petition for Review, we reverse the Commission's December Order to the extent that it found that Seropian violated Section 1103(a) the Ethics Act and ordered Seropian to pay restitution.

### *ORDER*

**NOW,** April 7, 2011, the April 21, 2010, Order of the State Ethics Commission (Commission) is hereby vacated. However, David Seropian (Seropian) has established an entitlement to file his Petition for Review to this Court of the Commission's December 29, 2009, Order (December Order) *nunc pro tunc* and, therefore, we vacate this Court's Order of June 1, 2010,

and reinstate Seropian's Petition for Review. Having reviewed the merits of the Petition for Review, we reverse the Commission's December Order to the extent that it found that Seropian violated Section 1103(a) of Public Official and Employee Ethics Act, 65 Pa.C.S. § 1103(a), and ordered Seropian to pay restitution.

---

(stating that damages will be calculated on the amount of financial gain "resulting from such violation"), 65 Pa.C.S. §§ 1107(13), 1109(c). There was no finding that Seropian's use of the District's computer for his personal use for two minutes per day interfered with his normal work duties, and there was no determination that this conduct violated the Ethics Act. Rather, the Commission expressly concluded that "Seropian violated Section 1103(a) of the Ethics Act when he utilized the facilities and equipment of [the District] for his personal benefit, including but not limited to his candidacy for School Director … and his position as a baseball team official." (December Order at 43, Conclusion of Law ¶ 4.) In an attempt to recover the pecuniary gain to Seropian based on his use of the District's computer, the ID introduced evidence regarding the cost of the computer equipment and six-months of internet service. (December Order at 14–15, 19–20, 28, FOF ¶¶ 71, 93, 103.) However, the Commission declined to assess the value of the computer equipment and six months of internet usage because, *inter alia:* Seropian did

not remove the computer; the computer and internet were not used exclusively for non-work-related purposes, but only used intermittently for personal use; the total *quantifiable* amount of Seropian's personal use was thirteen hours; and there was no basis for using six months as the time period for the calculation of internet usage. (December Order at 41–42.) Moreover, although the Commission found that Seropian violated the Ethics Act by using the District's computer for matters related to his candidacy for school board and his baseball team, the Commission made no calculations as to the pecuniary benefit that Seropian received from using his work computer on those matters. Thus, this situation is unlike *Bixler*, where the pecuniary gain calculated by the Commission was the garage's profits, which resulted from the public official's alleged violations of the Ethics Act.

11. Because of our resolution of this issue in Seropian's favor, we need not address Seropian's other allegations of error seeking the reversal of the December Order.