# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jeanne A. Wanner, : 
        Petitioner : 
         : 
        v. : No. 1786 C.D. 2017
         : Submitted: October 19, 2018
Unemployment Compensation : 
Board of Review, : 
        Respondent : 


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
             HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE CHRISTINE FIZZANO CANNON, Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**          **FILED: January 9, 2019**


     Jeanne A. Wanner (Claimant) petitions for review of a November 6, 2017 Order (Order) of the Unemployment Compensation Board of Review (Board) affirming a Referee's August 23, 2017 decision (Decision), which dismissed as untimely Claimant's appeal of a June 2, 2017 determination (Determination). The Determination found that Claimant was ineligible for unemployment compensation (UC) benefits for 33 weeks under Section 404(d)(1) and 404(d)(1.1) of the UC Law, 43 P.S. § 804(d)(1), (1.1).[1]  Upon review, we are constrained to affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 804(d)(1), (1.1).  Section 404(d)(1.1) was added by Section 5 of the Act of June 17, 2011, P.L. 16.  Section 404(d)(1) provides that an eligible employee is entitled to "compensation in an amount equal to his weekly benefit rate less the total of . . . (iii) the amount of severance pay that is

Claimant was employed by Bank of America (Employer) from November 9, 1992, to April 22, 2016, and was scheduled to receive $59,508[2] of severance pay. Claimant filed an application for UC benefits effective May 7, 2017. On June 2, 2017, the UC Service Center issued the Determination finding Claimant ineligible for benefits under the UC Law until the week ending December 23, 2017, because of her receipt of severance pay. (Determination; Referee Decision, Finding of Fact (FOF) ¶ 1.) The Determination indicated that Claimant's last day of work was April 22, **2017**, rather than April 22, **2016**. The Determination was mailed to Claimant at her last known address in Austin, Texas, and it notified Claimant that the last day to appeal the Determination was June 19, 2017. (FOF ¶¶ 2, 4, 5; Determination.) The Determination was not returned as undeliverable. The UC Service Center did not receive an appeal from Claimant until July 25, 2017, 36 days after the expiration of the appeal period. (Certified Record (C.R.) Item No. 5; FOF ¶ 6.) The matter was assigned to a Referee, and a hearing on the appeal's timeliness was scheduled for August 22, 2017.[3]

At the hearing before the Referee, Claimant explained that she had not received the Determination and, therefore, was unaware that she was ineligible for benefits until she was unable to submit her bi-weekly claim on June 19, 2017. (C.R. at Item 8, Hr'g Tr. at 5-6.) Claimant admitted that the Determination was mailed to her correct address, she was unaware of problems receiving mail there, it was the

---

attributed to the week." 43 P.S. § 804(d)(1). Section 404(d)(1.1)(i) defines severance pay as "one or more payments made by an employer to an employe on account of separation from the service of the employer, regardless of whether the employer is legally bound by contract, statute or otherwise to make such payments." 43 P.S. § 804(d)(1.1)(i).

[2] Although Claimant reported on her severance pay questionnaire that her gross amount of severance pay was $69,508, the Determination reported this amount as $59,508.

[3] Employer was notified of the date, time, and place of the hearing, but did not appear at the hearing.

same address to which other UC materials relating to her UC benefits, including her claim confirmation and UC Handbook, were mailed, and she had received those other materials. (*Id.* at 5, 8.) Nonetheless, Claimant stated she did not recall receiving the Determination. (*Id.* at 5.) Claimant testified that she called the UC Service Center the day after she was unable to submit her bi-weekly claim, June 20, 2017, at which time a representative informed her of the Determination of her ineligibility.[4] (*Id.* at 6.) Claimant testified that the representative helped her complete an online appeal during their conversation that day. Claimant explained that she clicked submit on the online appeal, and took a screen capture of her computer dated June 20, 2017, showing a completed petition for appeal, but also admitted that she never received confirmation of the submission. (*Id.* at 7.) Because she had not heard anything regarding her appeal, Claimant testified that she called the UC Service Center on July 25, 2017, and a representative told her that the June 20 appeal was never received. (*Id.*) Claimant stated the representative instructed her to file an appeal and attach the screen capture from June 20, 2017, which she did on July 25, 2017. (*Id.*)

Upon reviewing the evidence, the Referee found that because the Determination was mailed to Claimant's correct address and not returned as undeliverable, Claimant was presumed to have received it. The Referee implicitly discredited Claimant's testimony to the contrary, noting that the mere denial of receipt is not sufficient to defeat the presumption of receipt. (FOF ¶¶ 2, 3; Referee Decision at 2.) Further, the Referee determined that while Claimant "may have attempted to file an appeal on June 20, 2017[,] . . . an appeal was not received by the

---

[4] The representative with whom Claimant spoke on June 20, 2017, also advised Claimant that the Determination incorrectly listed Claimant's last day of work as April 22, 2017, rather than April 22, 2016.

3

Department on that date." (FOF ¶ 7.) The Referee found that the appeal was received on July 25, 2017, and was untimely, but acknowledged that it would have been untimely even if it was received on June 20. (Referee Decision at 2.) Not only did the Referee find that the appeal was untimely, but the Referee also found that Claimant did not meet her burden to establish that the untimeliness of the appeal was due to misinformation, fraud, administrative breakdown, or non-negligent conduct. (FOF ¶¶ 6, 8, 9.) Therefore, the Referee dismissed the appeal as untimely. (Referee Decision at 3.) Claimant appealed, and the Board affirmed, adopting and incorporating the Referee's findings of fact and legal conclusions. The Board, citing to Claimant's admission that she had no problem receiving mail at her current address, also discredited her testimony that she had not received the Determination. (Order.)

On appeal,[5] Claimant continues to argue that she did not receive the Determination, and also asserts that she has met the burden to allow her to proceed *nunc pro tunc* on the untimely appeal of the Determination. Claimant asserts that but for a UC Service Center representative incorrectly entering the year for her last date of her employment, she never would have received an incorrect Determination in the first place and, thus, would not have had to file an appeal. The UC Service Center representative's error in entering the date amounts to fraud or a breakdown in the administrative process, Claimant contends, and therefore she should be able to pursue the appeal of the Determination, which she maintains was filed only one day past the June 19, 2017 deadline. Claimant argues the dismissal of her appeal as

---

[5] Our review of the Board's Order "is limited to determining whether necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated." *Waverly Heights, Ltd. v. Unemployment Comp. Bd. of Review*, 173 A.3d 1224, 1227 n.2 (Pa. Cmwlth. 2017).

4

untimely is prejudicial because she acted with due diligence and good faith in filing the appeal after discovering a "breakdown in the process." (Claimant's Brief (Br.) at 8.)

The Board responds that Claimant did not prove she did not receive the Determination or that the circumstances surrounding her untimely appeal of the Determination warrant *nunc pro tunc* relief. In the Board's view, Claimant's appeal was untimely whether it was filed on July 25, 2017, as the Board contends, or June 20, 2017, as Claimant contends. It asserts it properly dismissed the appeal because Claimant did not prove that the untimeliness was the result of an administrative breakdown or fraud.

Section 501(e) of the UC Law provides that unless a claimant "files an appeal with the [B]oard[] from the determination . . . within fifteen calendar days after such notice was . . . mailed to [claimant's] last known post office address" then the determination "shall be final and compensation shall be paid or denied in accordance therewith." 43 P.S. § 821(e). This statutory appeal period is "jurisdictional and may not be extended as a matter of grace or indulgence;" therefore, appeals filed even one day after the appeal period are untimely. *Dumberth v. Unemployment Comp. Bd. of Review*, 837 A.2d 678, 681 (Pa. Cmwlth. 2003). When a determination is mailed to a claimant's last known address and is not returned, "there is a presumption . . . which the referee may invoke in reaching a determination that the claimant did have proper notice." *Gaskins v. Unemployment Comp. Bd. of Review*, 429 A.2d 138, 140 (Pa. Cmwlth. 1981).

Initially, we note that to the extent Claimant asserts she did not receive the Determination, the Board did not credit her testimony, citing her testimony that she had not had any problems with her mail. We may not revisit that credibility

5

determination. *See Narducci v. Unemployment Comp. Bd. of Review*, 183 A.3d 488, 498 (Pa. Cmwlth. 2018) ("The Board is the ultimate fact finder in UC cases and has the sole discretion to determine the credibility of witnesses."). Because the Determination was mailed to Claimant at her last known address, which she acknowledged was her correct address, and the Board discredited Claimant's testimony that she did not receive the Determination, it is presumed that Claimant received the Determination. *See Gaskins*, 429 A.2d at 140. The Determination was mailed on June 2, 2017, and advised Claimant that the deadline to timely appeal was June 19, 2017.

Although the Board and Claimant dispute the date upon which the appeal was filed, both dates, June 20, 2017, and July 25, 2017, are beyond the 15-day statutory appeal period. Thus, Claimant's appeal is untimely regardless of which filing date is used. Accordingly, we need to determine whether Claimant has shown that she should be given *nunc pro tunc* relief.[6] *Nunc pro tunc* relief for an untimely appeal may be considered in "limited circumstances," and "[t]he burden to establish the right to have an untimely appeal considered is a heavy one." *Hessou v. Unemployment Comp. Bd. of Review*, 942 A.2d 194, 198 (Pa. Cmwlth. 2008). A party can meet this burden by showing that "a delay in filing the appeal is caused by extraordinary circumstances involving fraud, administrative breakdown, or non-negligent conduct." *Lopresti v. Unemployment Comp. Bd. of Review*, 55 A.3d 561, 563 (Pa. Cmwlth. 2012) (quoting *Mountain Home Beagle Media v. Unemployment Comp. Bd. of Review*, 955 A.2d 484, 487 (Pa. Cmwlth. 2008)).

---

[6] Claimant acknowledges the untimeliness of the June 20, 2017 appeal in her brief to this Court, arguing that "[o]nce [Claimant] found out that she had missed the deadline, she immediately filed the appeal one day late." (Claimant's Br. at 5.)

6

Claimant asserts that the UC representative's error in entering her last day of work constitutes both fraud and an administrative breakdown that support the grant of *nunc pro tunc* relief. Administrative breakdowns may occur when "an administrative body acts negligently, improperly or in a misleading way." *Union Elec. Corp. v. Bd. of Prop. Assessment, Appeals & Review of Allegheny Cty.*, 746 A.2d 581, 584 (Pa. 2000). However, "not every misstatement by an apparently authoritative person will justify a *nunc pro tunc* appeal; rather, **the misinformation must relate to the availability, timing, or need for an appeal**." *Greene v. Unemployment Comp. Bd. of Review*, 157 A.3d 983, 992 (Pa. Cmwlth.), *petition for allowance of appeal denied*, 175 A.3d 217 (Pa. 2017) (emphasis added).

For example, in *Greene*, the claimant did not timely appeal a determination based upon a misunderstanding about the effect his receipt of severance payments would have on his UC benefit eligibility due to a conversation he had with a UC representative prior to his being laid off. *Id.* at 984-85. The Board dismissed the appeal as untimely, and we affirmed, rejecting the claimant's argument that *nunc pro tunc* relief should be granted because the UC representative had misled him about his eligibility for UC benefits. *Id*. at 991. We held that any misinformation provided by the representative regarding the claimant's **eligibility** was not related to the claimant's **right or necessity of appeal**. *Id.* Moreover, because the alleged misleading statements were made months prior to the appeal period, and, in the interim, the claimant had received correct information in his UC Handbook regarding his eligibility and in the determination regarding his appeal rights, we determined that his untimely appeal was not "caused by fraud or its equivalent by the administrative authorities, [or] by a breakdown in the appellate system," and *nunc pro tunc* relief was not warranted. *Id.* at 992 (emphasis omitted).

7

In contrast, in *Walsh v. Unemployment Compensation Board of Review*, we found a claimant had met her burden to show an administrative breakdown justifying *nunc pro tunc* relief. (Pa. Cmwlth., No. 1248 C.D. 2012, filed May 13, 2013), slip op. at 13.[7] There, the claimant received a determination finding her ineligible, which she timely appealed. Less than one month after she received the determination, the UC Service Center issued a **second** determination of ineligibility premised on different grounds. *Id.* at 2. During the 15-day appeal period for the second determination, the claimant received a notice of hearing for the appeal of the first determination, and the claimant, believing that the upcoming hearing would address the issues set forth in the second determination, did not immediately appeal the second determination. *Id.* at 3, 5-6. A hearing was held on the appeal of the first determination, and a referee reversed, finding the claimant not ineligible. *Id.* at 3. The claimant received a lump sum payment after the referee's hearing and decision, but nothing more. *Id.* at 5. The claimant called the UC Service Center repeatedly and was finally informed that she would not receive any more benefits because she had not appealed the second determination. *Id.* The claimant then filed a late appeal to the second determination, explaining that she believed all issues regarding her eligibility for benefits were resolved at the hearing, and she had received many reassurances from UC representatives that "everything was fine and/or time needed to pass for the referee's ruling to go through [the] system." *Id.* at 6. Therefore, the claimant argued, she was unaware of the need to file a separate appeal until weeks after the hearing, which was well after the 15-day appeal period for the second determination. *Id.* The Board dismissed the claimant's appeal of the second determination as untimely, but we reversed, agreeing with the claimant that the

---

[7] *Walsh*, an unreported opinion, is cited for its persuasive value in accordance with Section 414(a) of the Commonwealth Court's Internal Operating Procedures. 210 Pa. Code § 69.414(a).

service center's mishandling of the claim was an administrative breakdown that caused her confusion about the necessity to appeal the second determination. *Id.* at 10, 12-13. As a result of this mishandling, we found that the claimant "was forced to act when she would not otherwise be required to act or risk losing [UC] benefits due to the errors committed by the Service Center," which prevented her from "understand[ing] the need to appeal the second . . . determination." *Id.* at 12-13. We found that under those circumstances, *nunc pro tunc* relief was warranted. *Id.* at 13; *see also Seropian v. State Ethics Comm'n*, 20 A.3d 534, 542 (Pa. Cmwlth. 2011) (finding an administrative breakdown justifying *nunc pro tunc* relief where the agency's regulations relating to appeal procedures were "unclear and inconsistent" so as to mislead the appellant).

The claimant in *Walsh* did not timely appeal due to actions of UC representatives that mishandled her claim resulting in claimant's confusion regarding the right or necessity of appeal, whereas the claimant in *Greene* did not appeal because of a misunderstanding about his eligibility for benefits. The first situation justified the grant of *nunc pro tunc* relief as the agency's mishandling of the claim went to the necessity of appeal, but the second did not. The circumstances of the present case are more similar to *Greene* than to *Walsh*. Claimant has not presented evidence that any error or misrepresentation on behalf of the UC authorities were the cause of her untimely appeal. Claimant's arguments focus upon the underlying error in the Determination, but our analysis for determining whether *nunc pro tunc* relief may be granted centers on **what caused the untimely appeal**, not whether the Determination was in error. While Claimant asserts the alleged incorrect entry of her last date of work is fraud or administrative breakdown warranting *nunc pro tunc* relief, such alleged error did not cause her to file the appeal

9

after June 19, 2017. Claimant did not testify before the Referee that the UC representative's alleged error was the **reason** that she did not timely appeal. Moreover, Claimant did not speak with any UC representative about the Determination until after the 15-day appeal period had already run, meaning that the cause of the untimeliness could not have been related to her receipt of misinformation about the right or need to appeal. As noted above, because *nunc pro tunc* relief is granted only in "limited circumstances," the burden on a party to establish their entitlement to such relief is heavy. *Hessou*, 942 A.2d at 198. Claimant has not met that burden as she has not shown that actions attributable to the agency were the reason for her untimely appeal of the Determination.[8]

Because Claimant was found to have received the Determination, did not appeal that Determination within the statutory time period, and did not meet her heavy burden of establishing that the untimeliness of that appeal was the result of fraud or an administrative breakdown, we are constrained to affirm the Board's Order.

_____
**RENÉE COHN JUBELIRER,** Judge

---

[8] We note that our decision does not necessarily mean Claimant may be foreclosed from ever receiving UC benefits, because the Determination found Claimant ineligible only for the 33 weeks in which her severance pay was deductible.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jeanne A. Wanner,　　　　　　　　　　:
　　　　　　　　Petitioner　　　　　　:
　　　　　　　　　　　　　　　　　　　:
　　　　　　　v.　　　　　　　　　　　:　　No. 1786 C.D. 2017
　　　　　　　　　　　　　　　　　　　:
Unemployment Compensation　　　　　　:
Board of Review,　　　　　　　　　　　:
　　　　　　　　Respondent　　　　　　:

# **O R D E R**

　　**NOW**, January 9, 2019, the November 6, 2017 Order of the Unemployment Compensation Board of Review is **AFFIRMED**.

　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　**RENÉE COHN JUBELIRER,** Judge