**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 25-1716
_____

ROBERT BOYER, Executor of the Estate of Tamra Smith, Deceased;
ROBERT BOYER

v.

MICHAEL MULVEY,
                              Appellant
_____

On Appeal from the Middle District of Pennsylvania
(D.C. No. 3:19-cv-00242)
District Judge: Honorable Karoline Mehalchick
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
February 6, 2026

Before: HARDIMAN, MONTGOMERY-REEVES, and ROTH, *Circuit Judges*

(Opinion filed: March 4, 2026)

_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

HARDIMAN, *Circuit Judge*.

Pennsylvania State Trooper Michael Mulvey appeals an order denying his motion for summary judgment. Trooper Mulvey was sued by Robert Boyer, who claimed his Fourth Amendment rights were violated when Mulvey searched his residence. Because Mulvey was entitled to qualified immunity, we will reverse the judgment of the District Court.

I

Boyer was the mayor of Wyoming Borough from January 2006 until January 2018. During that time, he also ran a catering business—Boyer Brothers Bar-B-Que and Deli Food Truck.

In January 2018, Mayor Boyer authored a letter in support of the Wyoming Borough Council's application for a grant of state funds to renovate the *West* Wyoming Hose Company's firehouse. The Hose Company is a non-profit corporation providing volunteer fire and ambulance service to West Wyoming and Wyoming boroughs.

A month later, when Boyer was no longer mayor, a local news station reported on the proposed firehouse renovation. The firehouse had a banquet hall and it listed Boyer as its preferred caterer for events. Boyer Brothers Bar-B-Que and Deli Food Truck listed the firehouse as its address. The news station also reported that the grant would be used to, among other things, upgrade the firehouse's heating and air conditioning system and expand the kitchen in the firehouse's banquet hall.

After Mulvey learned of the news report, he began to investigate whether Mayor Boyer had violated the Pennsylvania Public Official and Employee Ethics Act by

2

engaging in "conduct that constitutes a conflict of interest." 65 Pa. Cons. Stat. § 1103(a); The Ethics Act defines a conflict of interest as "[u]se by a public official or public employee of the authority of his office or employment . . . for the private pecuniary benefit of himself . . . or a business with which he . . . is associated." 65 Pa. Cons. Stat. § 1102. But a conflict of interest "does not include an action having a de minimis economic impact," which the act further defines as "[a]n economic consequence which has an insignificant effect." *Id.* Nor does it cover an action "which affects to the same degree a class consisting of the general public or a subclass consisting of an industry, occupation or other group which includes the public official . . . or a business with which he . . . is associated." *Id.*

Mulvey confirmed that Boyer used the firehouse as the address for his catering company in print and social media advertising services. So he spoke with Senior Deputy Attorney General (SDAG) Bernard Anderson from the Pennsylvania Attorney General's Office, who advised Mulvey to further investigate what Anderson thought might be an Ethics Act violation. The State Police sent information to Brian Jacisin, the Deputy Executive Director for the State Ethics Commission, about Boyer's involvement in the grant application. Mulvey and Jacisin agreed to meet to discuss the matter.

Mulvey claimed that, ahead of his planned meeting with Jacisin, he reviewed the grant application, the minutes of the Wyoming Borough Council discussing the grant application, and Boyer's letter supporting the grant. Mulvey also claimed he spoke with Councilman Michael Baloga, who related that at executive sessions before the Council's vote on the grant application, Boyer and his girlfriend, Tamra Smith—who at the time

3

was the Wyoming Borough manager—"were very adamant about obtaining the grant" for the Firehouse. App. 262.

Mulvey then met with Jacisin and Special Investigator for the State Ethics Commission Jonathan Fry. Jacisin and Fry reviewed the grant application; after their review, Mulvey "determined that there [were] clearly ethics violations." App. 263. Jacisin "indicated that it was an ethics violation to conduct personal business out of the Hose Company banquet hall." App. 488. Jacisin and Fry stated that the State Ethics Commission wanted to work with the State Police on this investigation. As the investigation continued, Mulvey saw more postings on the Bar-B-Que and Deli Food Truck Facebook page, one of which stated: "we work out of the West Wyoming Fire Hall." App. 268.

In April 2018, Mulvey drafted a warrant application to search Boyer's home for evidence of an Ethics Act violation. Before Mulvey filed the application, he had SDAG Anderson review and approve it. In the affidavit of probable cause, Mulvey recounted the findings of his investigation:

- The Wyoming Borough Council had submitted a Local Share Account grant application to renovate the West Wyoming Firehouse.
- The firehouse has a banquet hall out of which Boyer, while mayor of Wyoming Borough, was operating his catering business.
- Boyer listed the firehouse's address in both print and social media advertisements as the address for his business
- The renovations to the firehouse included "an upgrade to the heating and air conditioning systems at the facility as well as an expanded kitchen." App. 71.
- Mayor Boyer sent a letter to the Secretary for the Department of Economic and Community Development supporting the grant application.

4

Based on these findings, Mulvey averred that he had probable cause to believe Boyer had "engaged in the criminal activities of at least attempted violations of the PA State Ethics Act, specifically Section 1103(a) Conflict of Interest." App. 74. Mulvey further averred that the search would uncover evidence of at least Boyer's attempted violation of Section 1103(a), such as checks, contracts, and correspondence between Boyer's business and the Firehouse.

A magisterial district judge issued the warrant to search Boyer's home. During the search, State Police officers seized several items, including Boyer's computer and financial documents. Thereafter, the Hose Company stopped permitting Boyer to operate his catering business out of the firehouse and the business ceased operating entirely.

Boyer sued Mulvey under 42 U.S.C. § 1983, claiming the search of his home lacked probable cause in violation of his Fourth and Fourteenth Amendment rights. The parties moved for summary judgment, disputing whether Mulvey's search warrant was supported by probable cause. Mulvey also argued that he was entitled to qualified immunity.

The District Court denied both motions. It first held that there was an issue of material fact as to whether Mulvey had probable cause to believe evidence of an Ethics Act violation would be found in Boyer's home. Turning to qualified immunity, the District Court determined that "the right to be free from unlawful searches except on probable cause" was clearly established. *Boyer v. Mulvey*, 2025 WL 848455, at *7 (M.D. Pa. Mar. 18, 2025). Without pointing to any factually analogous case, the Court concluded that if the warrant application's description of the renovations was misleading,

5

then a reasonable juror could find that Mulvey violated clearly established Fourth Amendment law. So the District Court denied Mulvey's motion for summary judgment on qualified immunity.

II[1]

On appeal, Mulvey reiterates his contention that he is entitled to summary judgment. We agree. Because Mulvey did not violate clearly established Fourth Amendment law, he is entitled to qualified immunity.

Mulvey is entitled to a presumption of qualified immunity because he consulted with two investigators for the State Ethics Commission before filing the warrant application, and that reliance was objectively reasonable. *See Kelly v. Borough of Carlisle*, 622 F.3d 248, 255–56 (3d Cir. 2010). This presumption serves the "salutary purpose" of "encouraging police to seek legal advice" and rests on the common-sense notion that officers cannot be expected "to be as conversant in the law as lawyers and judges who have the benefit not only of formal legal training, but also the advantage of deliberate study." *Id.* at 255. Mulvey's consultation with these ethics experts, who reviewed the underlying grant application, led him to conclude that "there [were] clearly ethics violations." App. 263, 488. To overcome this presumption, Boyer had to show that "a reasonable officer would not have relied on [their] advice." *Kelly*, 622 F.3d at 256.

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291.

6

Boyer did not make this showing, and the District Court never addressed this presumption despite Mulvey's reliance on it in his briefing below.

Presumption aside, the District Court's qualified immunity analysis also erred because it articulated the clearly established law too abstractly. The District Court held that it was clearly established that people have "the right to be free from unlawful searches except on probable cause." *Boyer*, 2025 WL 848455, at *7. True enough. But for purposes of qualified immunity, the Supreme Court has "repeatedly stressed that courts must not 'define clearly established law at a high level of generality.'" *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014)). Defining "extremely abstract rights," *White v. Pauly*, 580 U.S. 73, 79 (2017) (citation and internal quotation marks omitted), or using "general proposition[s] . . . is of little help in determining whether the violative nature of particular conduct is clearly established," *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). And as we recently explained: "existing law must clearly establish what *this* officer did in *these* circumstances violated the plaintiff's rights," and "that framing is especially important for Fourth Amendment claims because probable cause depends heavily on each case's facts." *Urda v. Sokso*, 146 F.4th 311, 314 (3d Cir. 2025).

The two cases the District Court relied on to formulate its broad abstraction— *Messerschmidt v. Millender*, 565 U.S. 535 (2012), and *Andrews v. Scuilli*, 853 F.3d 690 (3d Cir. 2017)—also do not present analogous facts. *Messerschmidt* considered whether there was probable cause to search the suspect's home for "all guns," even though he had used only a sawed-off shotgun to fire at his girlfriend. 565 U.S. at 540, 548–49. And

7

*Andrews* involved a § 1983 suit for false arrest and malicious prosecution based on an officer's misrepresentations and omissions in an affidavit supporting a warrant to arrest a man for attempting to lure a fifteen-year-old girl into his car. 853 F.3d at 694–95.[2] Neither case can "put the illegality of [Mulvey's] conduct 'beyond debate.'" *Urda*, 146 F.4th at 314–15 (citation omitted). Boyer cites a third case, *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 470 (3d Cir. 2016). But like *Andrews*, *Dempsey* did not involve a search, so it could not have clearly established the relevant law for this case. *Id.* at 463–66.

Boyer also argues that it should have been clear that any potential benefit from the firehouse renovation would be de minimis. But under Pennsylvania law, there is no "bright-line determination" as to what counts as de minimis, and the de minimis inquiry is "highly fact specific and must be considered on a case by case basis." *Seropian v. State Ethics Comm'n*, 20 A.3d 534, 545 n.10 (Pa. Commw. Ct. 2011). Boyer once again does not point to analogous authority that would put a reasonable officer like Mulvey on notice that his conduct was clearly unlawful.

\* \* \*

---

[2] "To be sure," *Andrews* "seemed to analyze qualified immunity at a high level of generality, stating that it is clearly established that people may not be arrested or prosecuted without probable cause." *Urda*, 146 F.4th at 314. But "*Andrews* cannot mean that courts may define clearly established law abstractly; that reading would conflict with a landslide of Supreme Court precedent." *Id.* (citing *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5–6 (2021) (per curiam) and seven other Supreme Court cases).

For the reasons stated, we will vacate the District Court's order granting summary judgment to Boyer on Count Two, reverse its order denying summary judgment to Mulvey on that count, and remand for judgment to be entered in Mulvey's favor.